(No. 39464.—

The People of the State of Illinois, Defendant in Error, *vs.* Clarence Kirk, Plaintiff in Error.

*Opinion filed Dec. 1, 1966.—Rehearing denied Jan. 17, 1967.*

Ward, J., took no part.
Schaefer, J., dissenting.

PAUL F. SANDQUIST, of Elmwood Park, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (ELMER C. KISSANE, DEAN H. BILTON and RONALD BUTLER, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE HOUSE delivered the opinion of the court:

Clarence Kirk was convicted of murder by a jury in the criminal court of Cook County and was sentenced to the penitentiary for a term of not less than 15 nor more than 30 years. On this writ of error he contends that the trial court erred in failing to suppress confessions allegedly obtained by constitutionally impermissible means, and that the prosecution made inflammatory and prejudicial remarks deliberately attempting to inflame the jury, thereby depriving him of a fair trial.

Shortly after 9 P.M. on February 21, 1962, Peter Oostema was shot and killed in an alley in Chicago while attempting to get his car out of snow. Maggie McMillan, a friend of the deceased, testified as follows. She left a tavern with Oostema a few minutes before the shooting occurred. They walked to his car, which was parked in the alley, and she waited outside the car while Oostema attempted to rock it out of the snow. While she was waiting, Mrs. McMillan saw a Negro boy, whom she later identified as the defendant, walk into the alley with a gun in his hand. Oostema told her that it was probably a toy, and when the person with the gun was about 15 or 20 feet from him he made an obscene remark to Oostema and continued walking down the alley past the car. Shortly afterward a snowball was thrown from the direction the boy had gone and struck Oostema's car. The snowball was followed by a gunshot and a bullet struck and killed Oostema. Mrs. McMillan said she could not see the boy when the snowball was thrown

or the shot was fired, but immediately thereafter she ran around the car, looked down the alley, and saw him running away.

On March 7, 1962, Maggie McMillan saw defendant go into an apartment building and recognized him as the person who shot Oostema. She called the police and shortly after noon, defendant, who was 18 years old, was picked up by police officers at his apartment and taken to police headquarters for questioning. About 3:30 that afternoon he admitted shooting a man in the alley where Oostema was killed on February 21, 1962. Maggie McMillan again identified the defendant at police headquarters. Thereafter, defendant was taken to another police station to be fingerprinted, after which he and three officers went to the scene to look for the gun which defendant said he had thrown on a roof. He was then returned to the original station and at about 7 P.M., in the presence of an assistant State's Attorney and a stenographic reporter, he gave another statement which he signed the following morning.

Prior to trial, defendant filed a petition to suppress oral and written confessions for the reasons that he was not advised of his constitutional rights to counsel and to remain silent, that he was refused permission to call counsel or relatives, and he was not told that anything he might say could be used against him. He also alleges that the oral and written confessions were elicited by means of physical violence and threats and were therefore not voluntary confessions. At the hearing on the petition defendant testified that on March 7, 1962, a police officer kicked him in the leg and threatened to push his head through the wall if he didn't tell the truth. The defendant's mother and an attorney who saw defendant at the hospital at the time of the inquest into the death of Oostema, testified they saw marks or bruises on defendant's leg. The prosecution introduced all material witnesses to the confession, including seven police officers, two assistant State's Attorneys, two county

jail clerks, the shorthand reporter who took defendant's statement, and the doctor who examined the defendant upon being admitted to the county jail on March 8, 1962. These witnesses categorically denied that any force was used or that threats were made to the defendant and testified that there were no marks or bruises on the defendant's leg either on March 7 or March 8, 1962.

The question of the voluntariness of a confession is for the trial court to determine and we will not disturb its decision unless it can be said that it is manifestly against the weight of the evidence, (*People* v. *Lego,* 32 Ill.2d 76,) or clearly erroneous. (*People* v. *Wilson,* 29 Ill.2d 82.) The testimony of the defendant, his mother, and an attorney appears to be in direct conflict with the testimony of all who participated in obtaining the allegedly involuntary confession and also in conflict with other persons who examined the defendant after he made his confession but before the attorney or defendant's mother saw him on March 9, 1962. The trial court conducted an extensive hearing on the question of voluntariness of the confession, and the testimony comprises over 750 pages of the record. On the basis of this evidence we cannot say the trial court erred in finding that the confession of the defendant was voluntarily made.

Defendant also argues that the confession is rendered inadmissible because he was not effectively warned of his right to counsel, to remain silent, and that his confession might be used against him. He urges the applicability of *Escobedo* v. *Illinois,* 378 U.S. 478, 84 S. Ct. 1758, 12 L. Ed. 2d 977, and *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694. Consistent with *Johnson* v. *New Jersey,* 384 U.S. 719, 16 L. Ed. 2d 882, we have held in a number of recent cases that the *Escobedo* and the *Miranda* decisions are applicable only to those cases where trial began after the dates of those decisions, June 22, 1964, and June 13, 1966, respectively. (See *People* v. *Myers,*

35 Ill.2d 311, and cases cited therein.) Since defendant was tried in November 1962, *Escobedo* and *Miranda* are not applicable. Failure to warn the defendant of his right to counsel, to remain silent, and that his confession could be used against him do not *per se* render a confession inadmissible. They are factors to be considered in determining the voluntariness and admissibility of a confession. (*People* v. *Hartgraves*, 31 Ill.2d 375; *People* v. *Kees*, 32 Ill.2d 299; *People* v. *McGuire*, 35 Ill.2d 219.) As previously noted, an extensive hearing was held on the petition to suppress the confession. The trial court considered testimony of the failure to warn the accused of his right to counsel, to remain silent, and that anything he said could be used against him. The testimony refutes the claim that defendant was denied the right to make a phone call to contact relatives or counsel. We think the trial court did not commit error in admitting the confession into evidence.

Defendant also contends the prosecution made deliberate and prejudicial attempts to inflame the jury thereby depriving him of a fair trial. In this argument in rebuttal the prosecutor noted the conflict in the testimony of the witnesses for the defendant and for the State and commented on defense counsel's challenge of the truthfulness of the State's witnesses. He then argued that the witnesses for the defense were false and went on to say that defense counsel were taking the doctrine of Adolph Hitler in that if enough lies were told by enough people, you would begin to believe these lies. Later in his argument the prosecutor apologized to the jury for failing to ask the defense witnesses whether they had been paid for their testimony. Objection was made to these two remarks. The jury was admonished that it was argument from inference when the first remark was made, and objection was sustained as to the second. The veracity of witnesses was initiated in oral argument by the defense attorneys who charged that a police officer had a motive to

testify falsely and called another witness a liar. Undoubtedly these isolated remarks, made in rebuttal, were in retaliation. We have held that a prosecutor may call a witness false if in doing so he relies on the evidence and the inferences from it to support his conclusion. (*People* v. *Weaver,* 18 Ill.2d 108.) However, we have repeatedly criticized personal attacks on defense counsel and consider them highly improper and unprofessional. Nevertheless, we conclude that the entire argument of counsel, when put in proper perspective, was not so inflammatory or prejudicial as to deprive defendant of a fair trial.

The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.

Mr. JUSTICE SCHAEFER, dissenting:

In the course of his argument to the jury one of the prosecutors stated: "I also want to apologize to the ladies and gentlemen of the jury, for both Mr. Siet [another prosecutor] and myself, who forgot to ask some of these witnesses a very important question. I forgot to ask them, as did Mr. Siet, 'Did you get paid for your testimony?' "

This remark was not based upon the evidence or upon inferences flowing from the evidence. To me its unmistakable implication is that the prosecutors knew that the defense witnesses were paid for their testimony, but unfortunately forgot to put that fact before the jury. I think that the remark was sufficiently prejudicial to require a new trial.