(No. 37713.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* DAVID HUDSON, Appellant.

*Opinion filed January 19, 1968.*

Ward, J., took no part.

Melvyn L. Medansky, of Chicago, appointed by the court, for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, and JOHN J. STAMOS, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and ELMER C. KISSANE and DAVID B. SELIG, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE KLUCZYNSKI delivered the opinion of the court:

In a 1961 jury trial in the circuit court of Cook County, defendant, David Hudson, was found guilty of rape and robbery and sentenced to 65 years in the penitentiary. He brings direct appeal claiming that his constitutional rights were violated by the trial court's erroneous admission of his confessions into evidence, by the State's withholding of evidence favorable to his defense and by the court's undue restriction of one of his attorney's participation in the trial.

The rape and robbery occurred at about 4:00 A.M., September 13, 1960, when an intruder entered the window of the complainant's apartment, raped her at knife point, committed unnatural acts upon her and took a wallet from her .purse. That same morning the victim described her assailant to police and shortly before 6:00 A.M., Chicago police officers, acting on a "hunch", went to the home of the defendant and took him into custody. The police considered defendant a likely suspect because he had been arrested on August 30 with a knife in his possession while drunk and sleeping in a stairwell in the building complex where the rape and robbery were committed. While in police custody, defendant made and signed the two confessions which were admitted at trial.

We first consider defendant's charge that his confessions were coerced and were therefore involuntary and constitutionally inadmissible. He urges that we make an independent determination of voluntariness based on the entire record, citing *Davis* v. *North Carolina,* 384 U.S. 737, 16 L. Ed. 2d 895, 86 S. Ct. 1761, and that we review the

entire record under the "totality of circumstances" doctrine pronounced in *Haynes* v. *Washington*, 373 U.S. 503, 10 L. Ed. 2d 513, 83 S. Ct. 1336.

In determining admissibility of a confession the ultimate test is the test of voluntariness made without reference to the probable truth or falsity thereof. It is for the trial court to determine this question, and its determination depends not upon any one factor, but on the totality of all the relevant circumstances. "Thus, the scope of inquiry at the preliminary hearing must be sufficiently broad to place before the trial judge all of the relevant circumstances surrounding the taking of the confession and bearing upon the question of voluntariness. The precise scope of the preliminary hearing necessary to determine whether or not a confession is voluntary will depend somewhat upon the circumstances of each case." (*People* v. *Scott,* 29 Ill.2d 97.) If the trial court rules the confession admissible and additional facts, not brought out at the preliminary hearing, later develop in the trial and bear upon the question of voluntariness of the confession, it is the duty of the trial court to require a thorough and complete investigation, and if such further development indicates that the confession was involuntary or that the defendant's will was overborne when given, it becomes the duty of the trial court to set aside its previous ruling and exclude the confession. *People* v. *Holick,* 337 Ill. 333.

At the preliminary hearing, defendant testified that on September 13, 1960, at 5:40 A.M., while at home in bed, he was arrested by police officers and taken to the 11th District Police Station where, although questioned and threatened with bodily harm, he denied participation in the rape and robbery. He was transferred, he said, at about noon to 11th and State streets, the location of the police crime laboratory and sex bureau. There, at the request of the police officers, he voluntarily submitted to a lie test. Afterwards, he was taken to a small room in the building

and informed that he had "flunked" the lie test and that his fingerprints were found at the scene of the crimes. He testified that officers threatened him and, more specifically, Officer McFarland told him: "You read in the newspapers where we are easy on you, the police on the police force, but we are not easy on you. We will beat the hell out of you." He said he refused to admit implication in the crimes but that the police "got so heavy" on him "without eating or sleeping" he had to confess. In addition, he claimed that the police then took him to the scene and forced him to reenact his entry into the apartment where the crimes were committed.

When returned to the 11th District Station, he initially refused to sign a statement, but did so after being threatened. Later, he made and signed another statement in the presence of the victim.

On cross-examination defendant stated that the only beating administered to him was in the small room at 11th and State streets, that McFarland told him that if he were in Mississippi he would be found at the bottom of the lake and people in his situation usually "don't have a trial", but that "if you confess here in the State of Illinois, you will get probation, we'll cut you loose or send you to a mental institution." McFarland, he said, beat him over the head and in the stomach six or seven times and only then did he "admit it." All this occurred in the presence of other officers who did not "beat him up."

All of the officers who participated in the interrogation and events surrounding defendant's confessions and admissions testified. Each of them denied threatening, beating or coercing the defendant, and each said he did not hear McFarland make the statements defendant attributed to him or see him strike defendant. McFarland, himself, specifically denied the charges. The gist of their testimony was that defendant, when taken to the police station, was interrogated for a short period and then moved to 11th and

State streets where he was given lunch and held pending an appointment at the crime laboratory. At 4:00 P.M. he was given a lie test, lasting about an hour and a half, and then interrogated in a small room for about fifteen to twenty minutes at which time he orally admitted participation in the offenses. Subsequently, he was taken to the place where he said he threw the stolen wallet, but a search failed to uncover it. Defendant then agreed to and did re-enact his entry into the victim's apartment. Upon his return to the district station he signed a confession at 8:45 P.M. and made a second confession in the presence of the victim at 10:30 P.M. which was signed by him and also by the victim as a witness. The trial court, upon the conclusion of this testimony, ruled the confessions admissible.

In the presentation of the People's case at trial, testimony was given as to the circumstances surrounding the procurement of the confessions prior to their admission into evidence. Defense counsel, in chambers, insistently referred to and sought to introduce the lie-test result, bringing out that the examiner's opinion was that defendant's answers were inconclusive. The trial court correctly ruled the test result inadmissible and we consider that result here only insofar as it bears on the issue of voluntariness in light of defendant's uncontroverted statement that the police said he "flunked" the test.

Defendant's counsel elicited from an officer, called as a defense witness, that defendant at the time he was questioned in the little room at 11th and State streets, was "evasive and went into a melancholy—it is a general reaction when someone confesses to a crime." When asked by counsel to describe some of the incidents to it, the officer said that when they spoke to the defendant, he would admit only "to raping her and when we asked him about the unnatural acts he would just put his head down and said, 'I didn't do it.'" Defendant, the officer said, also denied having a knife on his person at any time.

Other facts bearing on the issue of voluntariness, which were brought out at trial, were that at the time he made the statements defendant was 21, with two years of high school education, that he was fed twice on the day of his interrogation, and that he was not unfamiliar with police questioning and court procedure because he had been arrested and convicted for a misdemeanor two weeks prior to the rape and robbery.

In reviewing the totality of circumstances surrounding defendant's confessions, we give substantial weight to the finding of the trial court at the hearing, a ruling that will not ordinarily be overturned unless it is manifestly against the weight of the evidence. The trial court was aware that the confessions were procured after defendant was unlawfully arrested and illegally detained, factors that are significant in determining voluntariness but do not of themselves render the confession inadmissible. (*People* v. *Melquist*, 26 Ill.2d 22.) The court was also cognizant that the defendant was not advised of his rights to counsel and to remain silent nor of the consequences of his admission and confessions. Because the standards laid down in *Escobedo* v. *Illinois*, 378 U.S. 478, 12 L. Ed. 2d 977, 84 S. Ct. 1758, and *Miranda* v. *Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, were not applicable at the time of defendant's statements (*People* v. *McGuire*, 35 Ill.2d 219), these factors were merely significant attendant circumstances for the court to consider in ruling on the competency of his confessions. *Haynes* v. *State of Washington*, 373 U.S. 503, 10 L. Ed. 2d 513, 83 S. Ct. 1336.

Together with these circumstances the trial court considered the conflicting testimony of the police officers and the defendant regarding promises of leniency and physical and mental coercion and found the confession voluntary. From an examination of this testimony alone we find substantial evidence to support such a finding of voluntariness.

The testimony of the officers, which by implication the trial court found more credible than defendant's, was convincing and established that defendant was not mistreated and that he admitted his guilt freely after a single, short interrogation. While their testimony did not contradict defendant's claim that certain officers had told him he had "flunked" the lie test and that his fingerprints were found at the victim's apartment, these statements, if made, did not constitute coercion since the police may validly disclose matters to an accused which convince them he is guilty of the crime under investigation.

Furthermore, from an examination of all the facts and circumstances of record, and mindful that we need not be convinced of voluntariness beyond a reasonable doubt (*People v. Nemke,* 23 Ill.2d 591), we find the confessions here were not the product of a mind overborne by coercive action. The confessions were therefore properly admitted into evidence.

Next, we examine defendant's claim that the State suppressed evidence favorable to his defense by not introducing the results of fingerprint tests made at the scene of the crime. Defendant argues that "it can logically be assumed" that the results of the tests would tend to exonerate him, but we find nothing in the record to support this assumption. The factual situation present here is clearly distinguishable from that in *Brady* v. *Maryland,* 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194, cited by defendant as authority for his argument. In *Brady,* the State suppressed a confession of a co-defendant after the defense made a demand on the prosecution for all statements taken in connection with the crimes. In the instant case defense counsel knew about the fingerprint tests from defendant's testimony at the hearing and that of Officer Alexander at trial, and while they subpoenaed numerous records and reports from the police, they did not attempt to subpoena or request any

fingerprint tests. There is no proof here that such evidence could be favorable to the defense. We find no merit to defendant's claim of suppression.

Finally, we consider the charge that the court erroneously restricted the participation of one of the defense counsel, James D. Montgomery. The record shows that after the jury was selected and the State was ready to proceed with testimony, defense counsel informed the court that defendant's father had requested him to retain additional counsel. The next day, after two State's witnesses had completed their testimony, and a third had testified on direct, Montgomery appeared, interrupted the proceedings and attempted to cross-examine the latter witness, not having heard his direct testimony. Following several colloquies in chambers, the court indicated that Montgomery could assist in cross-examining the remaining State's witnesses by advising defendant's counsel who had represented him up to this point in the trial. Both defense counsel acceded to this agreement. An examination of the record reveals that despite this agreement Montgomery took an active part in making objections and arguments during the presentation of the remainder of the State's case and thereafter in the presentation of the defense, which included the recalling of all of the State's witnesses. Nonetheless, defendant now charges that Montgomery's participation was unduly restricted. Although neither party advances any Illinois case law on this point, we find the restriction here, which defense counsel agreed to, was a legitimate exercise of judicial discretion to insure the orderly progression of the trial. Looking beyond our jurisdiction for authority, we note that in *Commonwealth* v. *McCarthy,* 348 Mass. 7, 200 N.E.2d 264, a similar restriction was endorsed by the Massachusetts court which held that "it was within the judge's discretion not to allow one of the two attorneys who had appeared for both [defendants] to examine defense witnesses after the other attorney had cross-examined witnesses for the prosecution

and examined three of the defense witnesses." We agree.

We therefore, for the reasons stated here, affirm the judgment of the trial court.

*Judgment affirmed.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.