**People of the State of Illinois, Plaintiff-Appellee, v. Guy J. Ramirez, (Impleaded), Defendant-Appellant.**

Gen. No. 51,072.

First District, Second Division.

February 27, 1968.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Norman W. Fishman and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Robert B. Rosen, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE LYONS delivered the opinion of the court.

Martin Liszka, Paul DeMario and the instant defendant-appellant, Guy J. Ramirez, were jointly indicted for the offenses of robbery and murder. Defendant was prosecuted separately before a jury which returned verdicts of guilt as to both offenses on November 10, 1965. Defendant, accordingly, was sentenced to serve concurrent terms of from five (5) to ten (10) and of from fourteen (14) to fifteen (15) years in the Illinois State Penitentiary as per the respective counts. Subsequent to the return of the jury's verdicts, defendant offered oral motions in arrest of judgment and for a new trial, both of which were denied, and from which denial he brings this appeal.

Defendant pursues his appeal upon the multifold theory: (1) that error was committed below in the denial of defendant's motion to suppress his two confessions, both having been the involuntary product of psychological coercion by police authorities; (2) that both such confessions being substantially identical, the admission into evidence of the two was cumulative in nature and prejudicial; and (3) that the prosecution failed to adduce sufficient proof to establish either the corpus delicti of the crime charged or defendant's guilt beyond a reasonable doubt. In response, it is the State's theory that each of the aforesaid elements upon which defendant predicates his appeal is devoid of foundation in fact or law.

A full pretrial hearing was conducted below on defendant's motion to suppress the confessions. The uncontradicted portions of the testimony elicited by the State revealed that defendant and coindictee, DeMario, had been apprehended at defendant's home in the late evening hours of August 25, 1965, for questioning in regard to an August 15th strong-armed robbery, which fact was, at that time, made known to defendant. The arrest is admitted to have been made without a warrant, it likewise appearing that the identity of the alleged victim of the crime (John Baird) was not disclosed until sometime later. Defendant was thereafter transported to the Area 5 Headquarters and placed in overnight custody, without being questioned, in the 14th District lockup where he admits to having remained alone and undisturbed until sometime around 9:00 a. m. the following morning. At this juncture however, the State's version of the events of that day (August 26th) leading up to and culminating in the first of defendant's two written and signed confessions was contradicted by the testimony of the accused.

The State's principal witnesses in this regard were Police Officers Cody and Mahoney, both of whom claimed to have been the sole participants in defendant's interrogation. The two witnesses, without qualification, each denied having made or observed any threats of force or promises of leniency relative to defendant, or to having engaged in any forms of psychological coercion upon his person. As to the duration of their interrogative efforts, both related that defendant had been first questioned briefly regarding the Baird robbery at 9:00 a. m. for a period of approximately a half hour. Thereafter, the accused was taken to police headquarters at 11th and State for a scheduled 11:00 a. m. polygraph examination to which he had consented. Cody added that he had remained with defendant throughout his stay at

345

11th and State and that, to his knowledge, defendant was not again questioned until approximately 4:00 p. m. that afternoon shortly after his return to Area 5.

On cross-examination, Cody could not recall whether he had personally informed defendant that he would be permitted to make a telephone call or that he had a right to presence of counsel. Cody, however, explained that there were numerous signs to that effect posted throughout the Area 5 building, and that Officer Mahoney had directed defendant's attention to them. Mahoney's testimony made a similar acknowledgment, further stating that upon the witness' suggestion, defendant had arisen from his chair in the interrogation room, walked over, and appeared to have read one of these signs for about a minute. Mahoney testified that the posted signs were in conformity with the requirements of an Illinois statute.

At the afternoon interrogation, Mahoney admits to having told defendant in effect that when he was defendant's age a policeman has helped him out at a time when he needed help, and that it was best to tell the truth. Defendant adhering to his claim of innocence, Mahoney testified that he then informed defendant of John Baird's death earlier that day, advising him that now a murder, not just a robbery, was involved. It was at this point that defendant first gave an oral statement implicating himself in the offense. Cody accounted that defendant gave his inculpatory statement approximately 30 to 40 minutes after the questioning had resumed at 4:00 p. m., State's witness Gloria Williams, an Area 5 stenographer, adding that she had transcribed defendant's remarks shortly after 5:30 p. m. and observed defendant affixing his signature thereto. Mahoney asserted that defendant had, at no juncture, made any request to see a lawyer or to make a telephone call.

Testifying in his own behalf, defendant told the court that at the time of the foregoing events he was 18 years

of age, that he could speak English, and that the extent of his education was the completion of one year of high school. Defendant claimed to have never been apprised of his constitutional rights to remain silent and to consult an attorney, nor informed that he could make a telephone call. He further maintained to have not been fed until the evening of August 26th nor ever afforded the opportunity to examine the posted signs advising of his rights in the matter.

Defendant stated that the questioning lasted almost the entire day under the direction of different persons. He asserted that, at one point, an unidentified policeman had endeavored to trip him as he walked down a corridor to an interrogation room, overhearing someone at that time suggest that they beat him up for what he did to Baird. Having been made fearful and nervous by such tactics, defendant claims to have uttered his incriminating statement only after being further frightened by the revelation that Baird had died and by the suggestions of Officer Mahoney that he tell the truth because the police had five witnesses to prove that he was lying. In rebuttal, Mahoney denied ever having told defendant that only DeMario and not he could be held accountable for the murder.

Defendant's second confession had been taken in his mother's presence by Assistant State's Attorney, George Murtaugh, at 8:00 p. m. that same evening. Murtaugh testified as to having obtained some food for defendant and of having fully advised him of his rights before securing defendant's statement. Defendant on appeal, however, does not question the propriety of the circumstances attendant the taking of this latter confession. As against his motion to suppress, defendant argues only that by the precedent of People v. Thomlison, 400 Ill 555, 81 NE2d 434 (1948), a second confession, ostensibly valid in all respects, suffers from the same unlawful constraints by which the first was obtained, and hence

both must fail for want of voluntariness. It was from within this factual context that defendant's motion was considered by the court below and denied.

■ The principle of law for which defendant offers People v. Thomlison, supra, of course, finds no application in the case at bar lest we upset the trial judge's finding of voluntariness as to the first confession. Upon our inquiry into the nature of that initial statement, the question of its competency is a matter long reserved for the trial court to alone decide, the voluntary character of which, moreover, need not convince the court to that degree foreclosing all reasonable doubt. Accordingly, in passing upon the entirety of circumstances surrounding the rendition of that confession, our court will lend considerable credence to the findings of the trial judge who saw and heard the witnesses as to matters of credibility. It is a determination which will not ordinarily be disturbed on review, absent some abuse of judicial discretion or unless shown by the attacking party to be contrary to the manifest weight of the evidence. People v. Hudson, 38 Ill2d 616, 233 NE2d 403 (1968); People v. Hall, 38 Ill2d 308, 231 NE2d 416 (1967); People v. Spencer, 27 Ill2d 320, 189 NE2d 270 (1963). Viewed from such perspective in reviewing the record before us, we have found substantial evidence supporting the finding of voluntariness, evidence adequately demonstrating the absence of any psychological overbearance as would be tantamount to a form of coercion or inducement.

■ While the scope of the preliminary hearing is, to a degree, dependent upon the facts peculiar to the case, the instant proceedings, having postdated June 22, 1964, are agreed to have been within the realm of applicability of the constitutional guidelines enunciated in Escobedo v. Illinois, 378 US 478 (1964). The principles established in Miranda v. Arizona, 384 US 436 (1966), however, do not so attach, the commencement of the proceedings here antedating its effective date of prospective application.

348

Johnson v. New Jersey, 384 US 719 (1966); People v. Kirk, 36 Ill2d 292, 222 NE2d 498 (1966). Hence, as to the Miranda dictates requiring adequate warnings relative to rights to counsel, to remain silent, and the use of statements in evidence against the accused, failure to comply therewith in the case at bar would not per se, render defendant's confession inadmissible. Rather, they are deemed factually "significant attendant circumstances" for the court to consider in conjunction with the question of voluntariness. People v. Hudson, supra; People v. Kirk, supra.

■ Here, that question was resolved in the affirmative upon the trier of fact's belief in the State's version of the case. It is a determination the record here on review will not permit us to disturb. There is no dispute but that defendant had not been interrogated during his overnight confinement. The two interrogation sessions themselves were for relatively brief periods of time, separated from one another by a span of about six hours, and conducted by what would appear to not have been an overwhelming number of persons, all of which is uncharacteristic of the classical case of coercion. Defendant stated that he could speak English, acknowledging the existence of posted informational signs in the Area 5 building (denying only that he read them), which signs Officer Mahoney attested conformed to the requirements of the statute. See Ill Rev Stats 1965, c 38, par 103–7. The two officers' testimony further corroborated that defendant, in fact, had been directed to and personally viewed the contents thereof. Under such circumstances, this court does not understand Escobedo as tainting an otherwise voluntary confession because the State did not, as such, affirmatively caution the accused of such rights. People v. Hartgraves, 31 Ill2d 375, 202 NE2d 33 (1964); People v. Miller, 33 Ill2d 439, 211 NE2d 708 (1965).

■ Defendant, in essence, makes no claim to the involuntariness of his confession because of threats of

physical force, but rather as the end result of a mind overborne by subtle tactics designed to instill fear or induce reliance. Yet defendant does not assail the statements of advice by Mahoney or his revelation of Baird's death as calculated falsehoods. Such remarks being mere statements of truth uncoupled with some intimation of compromise, we cannot deem them sufficient to evidence an inducement which produced an involuntary acknowledgment of complicity in the questioned offense. People v. Pugh, 409 Ill 584, 100 NE2d 909 (1951); People v. Hartgraves, supra.

Unlike Escobedo, there is no testimony of record which would indicate that the accused ever requested and was denied an opportunity to make a telephone call or to seek the advice of counsel. Similarly, while the State offered no testimony to refute defendant's claim to having not been fed until approximately 8:00 p. m. that day, it does not appear that defendant ever made a request for food. This is not to say that it was incumbent upon defendant to make the request in the first instance. It was simply another relevant factor taken together with defendant's age, education, and arrest without a warrant, the sum total of which not of itself sufficient to render the confession inadmissible, and of which the trial judge was cognizant in rejecting defendant's motion. People v. Hudson, supra; People v. Melquist, 26 Ill2d 22, 185 NE2d 825 (1962).

We similarly can find no prejudicial abuse of discretion in the admission into evidence of both confessions. While the State concedes the two to have been almost identical in substance, they submit, and we agree, that the second was offered, not for its cumulative value, but rather to corroborate the suspected nature by which the first was alleged to have been obtained, as it affected its credibility. Inasmuch as defendant's failure to complain of the circumstances surrounding his second confession supports the State's position on the issue, we feel

the two were properly admitted below as competent evidence of defendant's guilt. People v. Witherspoon, 27 Ill2d 483, 190 NE2d 281 (1963); People v. LaCoco, 406 Ill 303, 94 NE2d 178 (1950). Defendant's case of People v. Burson, 11 Ill2d 360, 143 NE2d 239 (1957) is inappropriately taken on this point. There an unsigned written statement was introduced into evidence subsequent to State offered testimony relative to certain oral admissions made by the accused. Unlike the case at bar, the latter evidence was of dubious authenticity, the admission of which could have been of little or no corroborative force but for its cumulative effect upon the jury.

Defendant, citing People v. Jones, 22 Ill2d 592, 177 NE2d 112 (1961), next assigns as error the failure of the prosecution to prove beyond a reasonable doubt that Baird's demise had been the product of the criminal agency of some person/s. Such a contention we find to be factually unsupported by the record. The State called Dr. James Henry, Chief Pathologist for the Cook County Coroner, who fixed the medical cause of Baird's death as aspiration pneumonia, but, however interjecting that in his opinion the underlying cause therefor, as revealed by his autopsy, had been severe injury to the brain. Elaborating on the subject, the witness stated that his external examination of the deceased disclosed extensive contusions or bruises on the neck, the upper portions of the chest, and over both cheeks of the face which he deemed the cause of the brain damage. On cross-examination, the doctor did, in fact, concede that the named injuries could have resulted from a fall, yet on redirect, qualifying that remark by stating that it would have been almost anatomically impossible for the said injuries to have been occasioned by such a trauma because of the total absence of injury to the deceased's nose structure, one of the most prominent and hence exposed features of the face.

Testimony for the State furthermore described the scene of the alleged offense, Baird's apartment, as having been discovered in a "bloody shambles" by the investigating officer. The room was depicted as having the contents of numerous open drawers scattered over the floor, Baird's eyeglasses lying broken upon a nightstand, with the bed in which he was found covered with coagulated blood. Marie Grant, who had known and been in the deceased's employ for about 2½ years, described Baird as a slight man in his late seventies, a little over five feet tall and weighing 105 lbs. She stated that despite his advanced age she had never known him to be sick, unsteady of foot, or to have ever fallen.

The only testimony warranting a contrary conclusion came from Henry Cook, a tenant in Baird's apartment building. The witness stated he discovered Baird in a bloodied condition and inquired of him whether he had been beaten or had fallen down some stairs. Cook related that the deceased had replied in the negative to both questions and directed him not to call the police. In substance, this was the extent of the evidence offered in rebuttal to the existence of the corpus delicti of the crime.

Albeit, Cook's account was the more closely related testimony on the subject, we feel that its worth was properly discredited by the jury, particularly in light of the apparent state of fear or shock the victim most likely was suffering from, as well as the contradictory evidence submitted by the State which portrayed a scene of extreme violence. Defendant relies upon People v. Willson, 401 Ill 68, 81 NE2d 485 (1948), to caution this court that the corpus delicti cannot be heard to be established by resort to the accused's confession unless otherwise proven by the indications of independent evidence. With that rule we have no quarrel, it simply not obtaining to the factual context of the proceedings below. Here, the fact that the victim's demise was the consequence of the unlawful act of some person/s, we think was

adequately demonstrated by the circumstances shown to exist after the alleged altercation, Cook's testimony notwithstanding. Direct positive evidence is not requisite to proof of the corpus delicti of the offense if such can be established by other evidence, circumstantial as it may be, where the effect thereof is to be so corroborative of the defendant's confession as to show the act of some criminal agency beyond a reasonable doubt. People v. Pry, 38 Ill2d 261, 230 NE2d 825 (1967). The court is of the opinion, suffice to say, that the evidence adduced below adequately so demonstrated.

Lastly, defendant charges that the State failed to prove his guilt of the offense beyond a reasonable doubt. That contention however is a shallow claim in that it is premised upon the erroneous assumption that defendant's confessions were inadmissible to establish the fact of guilt.

Our reflections upon Cook's testimony show that defendant was positively identified as the person the witness had seen in the apartment building within a few hours prior to his discovery of the victim. Defendant, moreover was said to have told Cook during their hallway confrontation in the building that he had come to see the "old man" (Baird) about renting an apartment. Candace Bergman and Sharon Smith each likewise testified that they had accompanied coindictees, Liszka, DeMario and Ramirez in their journey by car to that building on the afternoon of August 15th. While their testimony suffered from certain minor inconsistencies as to the exact time, they stated without contradiction, that shortly before DeMario had asked defendant where they could get some money, he in reply directing them to Baird's apartment building where he had once been a tenant. Bergman added that after some wait, the three hastily emerged from that building acting very peculiar and nervous, DeMario acknowledging to defendant in her presence that he had gotten fifty dollars. This testimony

was furthermore corroborated by and consistent with defendant's accounting of what had transpired as made in his two lengthy confessions.

Testifying in his own behalf, defendant denied complicity in the crime offering, alibi witness Donna Hunt in corroboration thereof who claimed to have been in defendant's company at his home during the afternoon the murder was alleged to have been committed. On appeal, defendant places the thrust of his argument upon what he says to be the unbelievable testimony of Bergman and Smith, offering to the court the fact that both were accomplices in the offense and that the former testified that the police had told her they would not press charges if she testified.

While we take cognizance of the authorities upon which defendant relies, where, as here, the questioned testimony manifests elements of close corroboration between the witnesses' accounts and that which the accused himself admitted in his confession, it is not our province to usurp the function and determination of the jury as to matters involving only the credibility of witnesses. We feel the evidence affirmatively established defendant's guilt beyond a reasonable doubt. The judgment is affirmed.

Judgment affirmed.

BURKE, P. J. and McNAMARA, J., concur.