People of the State of Illinois, Plaintiff-Appellant, v. Irwinna Weinstein, Defendant-Appellee.

Gen. No. 52,657.

First District, Second Division.

May 27, 1969.

McNAMARA, J., dissenting.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and John F. Ward, Jr., Assistant State's Attorneys, of counsel), for appellant.

Frank G. Whalen, of Chicago, for appellee.

ON REHEARING.

MR. JUSTICE BURKE delivered the opinion of the court.

Irwinna Weinstein and Richard Mattox were indicted for the murder of Harvey Weinstein, husband of Irwinna Weinstein. She was granted a severance. She appealed from a judgment entered on a verdict finding her guilty of murder and sentencing her to a term in the State Reformatory For Women. We affirmed the judgment. People v. Weinstein, 66 Ill App2d 78, 213 NE2d 115.

The Supreme Court granted defendant's petition for leave to appeal. In an opinion filed September 23, 1966, the Supreme Court said: "Because of our conviction that the closing argument of the People deprived the defendant of a fair trial, the judgment of the trial court is reversed and the cause remanded for a new trial." People v. Weinstein, 35 Ill2d 467, 220 NE2d 432.

383

The cause was reinstated upon the trial docket. The defendant thereupon filed a petition to suppress any confessions, statements, or admissions made while she was in custody on the ground that they were involuntary. The People appeal from an order sustaining defendant's motion to suppress certain statements she gave to the police while at the police headquarters. In the trial of the case previously appealed the defendant did not move to suppress any evidence. On the present appeal there is no contention that the motion to suppress or the ruling thereon contravenes the mandate of the Supreme Court. See Jackson v. Glos, 249 Ill 388, 392, 94 NE 502.

██ Defendant asks that the appeal be dismissed on the ground that the People's brief waives the only issue to be determined. She says that the brief does not argue that the statements were voluntary and does not cite cases that in any conceivable way could be persuasive on the issues. She further urges that the sole issue of voluntariness of the statements can only be resolved by consideration of the totality of the facts and circumstances and that the People's brief barely touches on the facts bearing on this issue. She also insists that the People's abstract is not sufficient to present fully the error relied upon. We are satisfied that the People's brief sufficiently presents the issue of the voluntariness of the statements. Supreme Court Rule 342(e)(5) provides that the abstract will be taken as sufficient unless the appellee files an additional abstract with his brief. The appellee did not file an additional abstract. Rule 342(g) provides that omission of any relevant portion of the record from the excerpts shall not prejudice a party unless the reviewing court finds that there has been no good-faith effort to comply with the rule. We think that the People's abstract adequately covers the record of the error urged and that the appeal should not be dismissed.

The People maintain that the failure of the police to give certain warnings did not amount to a denial of defendant's right to counsel, that the absence of counsel's physical presence during the interrogation did not amount to a denial of defendant's right to counsel and that the defendant's right to counsel is not determinative of the question whether or not the statement made was voluntary. The defendant answers that the decision of the trial judge that defendant's statements were involuntarily made, was not against the manifest weight of the evidence or a clear abuse of discretion, that considering the totality of the circumstances, the judgment was proper, that the promise of release from arrest was sufficient to exclude the statements, that the absence of counsel's physical presence during the interrogation was a factor to be taken into consideration and that whether defendant's right to counsel or the absence of counsel during the interrogation were "determinative" depends upon what is meant by the word as used in the trial judge's opinion.

The facts brought out at the hearing on the motion to suppress certain statements are as follows.

### Testimony of Commander Francis Flanagan of the Chicago Police Department.

As part of his investigation of the death of Harvey Weinstein, he and Lieutenant John Cartan went to defendant's home at about 7:45 p. m. on September 30, 1963. There were several persons present on the premises, including her mother, aunt, sister, a maid and a physician. After he had a conversation with some of these persons, the defendant appeared. Lieutenant Cartan and he talked to her alone in the T. V. room, but they had not excluded the other members of the family. They did not tell defendant that she had a right to the presence of an attorney, court-appointed or otherwise, nor did they tell her that she had the right to remain silent. However, he allowed her to call an attorney if he could

also talk to the attorney. The defendant's father appeared during the questioning, and an attorney was called. Both the witness and the defendant talked to the attorney on the telephone, and the attorney was informed by the witness that the defendant was to be taken to headquarters. Defendant was given her choice of being accompanied to headquarters either by a female member of her family or by a policewoman. The defendant, her sister and the police left the home about 9:00 p. m. and arrived at headquarters about 9:30 p. m. Defendant was taken to a conference room at the headquarters, and at some point during the questioning a suitcase was brought into the room. At that point, the defendant answered certain questions asked by the witness. Prior to the production of the suitcase defendant had not answered these questions. The attorney, who had been contacted earlier, arrived at headquarters about 11:00 p. m. The defendant did not repeatedly ask for the presence of her attorney, nor did the attorney complain that he was kept waiting downstairs for hours. The witness did not tell defendant that she could not go home until she made a statement, or that she would not be allowed to attend her husband's funeral unless she gave a statement. Defendant was released at about midnight.

*Testimony of Lieutenant John Cartan, called by defendant.*

His testimony was substantially similar to that of Commander Flanagan. They arrived at police headquarters at about 10:00 p. m., and defendant's attorney entered the conference room at about 11:15 p. m. or 11:30 p. m. Neither he nor any other officer told the defendant that she could not go home or attend her husband's funeral unless she gave a statement.

*Testimony of Marion Slatin, called by defendant.*

She is defendant's sister, and was present when the police arrived at her sister's home on September 30 at

about 7:30 p. m. When they arrived, the defendant who had taken a sedative was asleep. The two officers took the defendant into the den and would not let anyone else enter. Some member of the family called an attorney on the telephone, and Commander Flanagan talked to him. The witness and defendant went with the police officers to headquarters, arriving about 8:45 p. m. She was present while her sister was being questioned. Defendant refused to make a statement and requested the presence of her attorney. However, the police would not permit her to call the attorney, and informed her that if she did not make a statement she would be placed in jail and not allowed to attend her husband's funeral. A suitcase was brought into the room about an hour after their arrival. Shortly afterwards, the attorney who had been called arrived in the room. He was upset because he had been kept waiting downstairs for hours.

*Testimony of Defendant.*

She did not recall what time the police arrived on September 30, 1963, because she had been asleep and under medication. While she was being questioned in the den, no one else was allowed to enter. During that time, she refused to make a statement and asked to talk to a lawyer. At no time was she advised that she had the right to an attorney and a right not to make any statements. She was allowed to call an attorney provided that Commander Flanagan could speak to him. She told her attorney that she was under arrest and asked him to meet her at police headquarters. She then asked to see a warrant for her arrest, but Commander Flanagan stated that if he went for a warrant he would return with sirens going and lights flashing. They arrived at police headquarters about 8:45 p. m. and went up to a conference room where defendant was questioned. She was told that if she did not make a statement she would be jailed and could not go to her husband's funeral; on the other hand, if she

387

did make a statement, she would be allowed to go home. She asked to talk to her attorney, but was not allowed to call him. After about an hour, a policeman confronted her with some articles in a suitcase; at that point she made a statement. Her attorney came into the room about 11:30 p. m., and was upset because he had been kept waiting downstairs for hours.

The defense rested, and the assistant State's Attorney requested and received a continuance so that the attorney mentioned could be brought into court. At the next hearing, both sides rested without presenting any further evidence. The record of the hearing in the instant appeal does not reflect the contents of the statements. It is apparent, however, that the parties and the court knew that they were discussing and deciding the statement set out in our opinion, 66 Ill App2d 78, 213 NE2d 115.

The Supreme Court opinion (35 Ill2d 467, 220 NE2d 432) did not recount the evidence at the trial saying that "it is accurately summarized in the opinion of the appellate court." Our opinion reported in 66 Ill App2d 78, 213 NE2d 115 states the testimony of the defendant in the trial of the case. In the opinion we said, (page 88): "Taken to police headquarters, the defendant was asked if she was having an affair with Richard Mattox. She replied, 'How do you know this, who told you this?' When confronted with the suitcase the defendant said, 'My God don't open that!' Defendant then told the police that the suitcase contained a quilt and a spread from Bonnie's room and that they were bloody. She then told the police, substantially as she testified, that Mattox, and Harvey had a fight, that both got bloody and that Harvey said, 'We'll go outside and finish this' and that they walked from the house. Mrs. Weinstein told the police that she then went to sleep."

■■ The only substantive issue to be determined is whether the trial court erred in finding that certain statements made by defendant were involuntary, and thus

inadmissible. It is well settled that the question of the voluntariness of a confession is for the trial court to determine, and a reviewing court will not disturb the decision of the trial court unless it is manifestly against the weight of the evidence, or if the court has clearly abused its discretion. People v. Myers, 35 Ill2d 311, 220 NE2d 297; People v. Kirk, 36 Ill2d 292, 222 NE2d 498; People v. Spencer, 27 Ill2d 320, 189 NE2d 270. In the instant case, the trial judge determined that the statements were involuntary. Defendant maintains that the trial judge's ruling should be affirmed on the theory of the totality of the circumstances. The United States Supreme Court in People v. Johnson, 384 US 719, 733, held that the rules requiring the warnings were to be applicable only to cases commenced after the date of the Miranda decision, June 13, 1966. Our Illinois Supreme Court reiterated this rule in People v. Henderson, 37 Ill2d 489, 229 NE2d 519. In People v. Worley, 37 Ill 2d 439, 227 NE2d 746, the court held that the Miranda rules were inapplicable to retrials occurring after June 13, 1966. In all cases, originally tried prior to that date, the failure to give the warnings is a factor to be considered in determining the voluntariness and admissibility of a confession.

The trial judge found that the questioning of defendant commenced in her home. He found that she was not held incommunicado. She talked to her lawyer before the police came to her home. The judge found that the defendant was permitted to make a telephone call from her home to her attorney; that she was told that she was going to be questioned by the police at Central Headquarters and that she told her attorney that she was under arrest. Commander Flanagan also told the attorney that he was going to take the defendant to his headquarters. The trial judge said that the defendant's attorney appeared at police headquarters some two hours after the defendant arrived and thus after the state-

ment had been taken. In this case the defendant was not held incommunicado. Her sister was with her at all times. The defendant was held for not more than an hour before she made the statement. She spoke only when confronted with the suitcase containing certain physical evidence. The presentation of the suitcase brought a spontaneous and voluntary exclamation from defendant.

The trial judge did not make a finding that the defendant's attorney was kept waiting at police headquarters. The trial judge did not find that the defendant was threatened by the police. The defendant was advised of her constitutional rights by her own attorney. She was aware of her right to be silent and that anything she might say could be used against her. She remained silent and did not answer the police questions at her home and for a period of one hour at police headquarters. She knew that she was going to be interrogated by the police. There is no complaint of physical brutality. The defendant's sister used the telephone during the interrogation to call the defendant's mother to tell her not to worry. The defendant continued to talk to Commander Flanagan in the presence of her attorney for one hour. Commander Flanagan denied that the police placed any obstacles in the way of defendant's attorney communicating with her. Lieutenant Cartan, who testified in the hearing as a witness for the defendant, corroborated the testimony of Commander Flanagan. The testimony of defendant and her sister that Attorney Mindes had been kept waiting downstairs while she was being interrogated was not based on first hand knowledge of these witnesses, but on their testimony as to what this attorney said when he arrived. The attorney did not testify.

A careful consideration of the record convinces us that the finding and order of the trial judge is against the manifest weight of the evidence. Therefore, the order suppressing the defendant's statements is reversed

and the cause is remanded for further proceedings consistent with these views.

Order reversed and cause remanded for further proceedings.

LYONS, P. J., concurs.

McNAMARA, J., dissenting:

As the majority opinion points out, the question of the voluntariness of a confession is for the trial court to determine, and a reviewing court will not disturb that decision unless it is manifestly against the weight of the evidence. People v. Kirk, 36 Ill2d 292, 222 NE2d 498 (1966). And in determining the character of a confession, the trial court is not required to be convinced beyond a reasonable doubt. People v. Spencer, 27 Ill2d 320, 189 NE2d 270 (1963).

Since the case was commenced prior to the effective dates of Escobedo v. Illinois, 378 US 478 (1964) and Miranda v. Arizona, 384 US 436 (1966), failure to inform defendant that she had the right to the presence of an attorney and the right to remain silent did not per se render the statements inadmissible. Johnson v. New Jersey, 384 US 719 (1966). However the United States Supreme Court has held that even in pre-Miranda interrogations, the fact that a defendant was not given the proper warnings must be considered as a significant factor in considering the voluntariness of statements later made. Davis v. North Carolina, 384 US 737 (1966). See People v. Kirk, supra; People v. Hester, 39 Ill2d 489, 237 NE2d 466 (1968).

Certain facts are undisputed. Defendant was not advised by the police of her right to the presence of an attorney, nor was she advised by them of her right to remain silent. At defendant's home, some member of her family suggested contacting an attorney, and the police commander consented as long as he could talk to the

391

attorney. The attorney was contacted, and the police informed him that they were taking defendant to headquarters. Some time during the evening the attorney arrived at the room where the interrogation was taking place. The trial court, in finding that the statements thereafter made were involuntary and thus inadmissible, stated:

"The fact that Commander Flanagan had personally corresponded and talked to the attorney, advising him as to where the defendant was being taken, and the fact that the attorney subsequently appeared, indicates that it was the purpose of the phone call and the purpose of the defendant, as well as the attorney, for the attorney to be present during such time as she was in custody for whatever purposes might have been indicated."

Accordingly, the trial court found that defendant had requested the presence of counsel and that the officers were aware of her request. It further found that her right to the presence of counsel during interrogation was violated and that she was denied her constitutional rights. I do not believe that these findings were against the manifest weight of the evidence, nor did they constitute an abuse of the trial judge's discretion. Clearly the undisputed testimony reveals that defendant and her attorney both expected and desired that he be present during interrogation. Just as clearly, the evidence indicates that there was no waiver of that request on the part of the defendant. Under those circumstances, the trial court could properly conclude that the statements were involuntarily made.

In stating that the defendant was advised of her constitutional rights by her own attorney prior to interrogation and that she was aware of her right to be silent, the majority are accepting the argument made by the State, because the record does not reveal any such advice or awareness.

392

While the court properly found that the deprivation of counsel was determinative of the issue of voluntariness, there was also testimony by the defendant and her sister that the statements were obtained after she had been told that she would be released only after making a statement. They further testified that the defendant was informed that she would be jailed and not be allowed to attend her husband's funeral unless she made a statement. The State argues that since the trial judge did not comment on those charges made by the defense, he did not consider them in making his finding that the statements were involuntary. I do not agree. The trial court in rendering its opinion stated that it was "considering the totality of the circumstances," and added that "under the circumstances in this case the court finds that the statements made by the defendant were not voluntary." It is evident that the trial judge considered all the factors in determining whether the statements were voluntary.

While the majority opinion properly states that the trial court did not make a finding that the attorney was kept waiting at police headquarters as charged by defendant and her sister, it should be noted that the trial judge simply found that the attorney arrived at the interrogation after about two hours, and after the statement had been taken.

Moreover, implicit in the State's entire argument is the contention that this court is bound by the trial court's reasons for its finding of voluntariness. While I agree with the trial court's reasoning, even if it were to be assumed that the reasoning did not support its conclusion, a party on appeal is permitted to complain of a decision, but not the reasons given for it. Campbell v. Powers, 139 Ill 128, 28 NE 1062 (1891) ; Roby v. South Park Comr's, 215 Ill 200, 74 NE 125 (1905). The only issue for this court to determine is whether all of the evidence supports the decision of the trial court. I believe it does.

393

In People v. Ramirez, 92 Ill App2d 341, 235 NE2d 412 (1968), in upholding the trial court's finding that the confession was voluntarily made, this division stated in language appropriate to the instant case:

"Upon our inquiry into the nature of that initial statement, the question of its competency is a matter long reserved for the trial court to alone decide, the voluntary character of which, moreover, need not convince the court to that degree foreclosing all reasonable doubt. Accordingly, in passing upon the entirety of circumstances surrounding the rendition of that confession, our court will lend considerable credence to the findings of the trial judge who saw and heard the witnesses as to matters of credibility." (P 348.)

I believe that the order suppressing certain statements should be affirmed.