(No. 42334.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* IRWINNA WEINSTEIN, Appellant.

*Opinion filed September 29, 1970.*

Ward, J., took no part.

Frank G. Whalen, of Chicago, for appellant.

William J. Scott, Attorney General, of Springfield, and Edward V. Hanrahan, State's Attorney, of Chicago, (James B. Zagel, Assistant Attorney General, and Elmer C. Kissane, Anthony Montemurro and James W. Reilley, Assistant State's Attorneys, of counsel,) for the People.

Mr. Justice Crebs delivered the opinion of the court:

Irwinna Weinstein, defendant herein, and Richard Mattox, were jointly indicted for the murder of defendant's husband, and in a separate jury trial in the circuit court of Cook County defendant was convicted and sentenced to the State Reformatory for Women for a term of 20 to 30 years. Subsequently, on appeal to the Appellate Court, First District, her conviction was affirmed (*People* v. *Weinstein,* 66 Ill. App. 2d 78), and then on leave to appeal this court reversed and remanded for a new trial. (*People* v. *Weinstein,* 35 Ill.2d 467.) After reinstatement on the trial docket, and on motion of defendant, the trial court entered an order

suppressing certain statements of defendant on the grounds that they were involuntary. On appeal by the State this order was first affirmed by the Appellate Court and then, on rehearing, was reversed and remanded for further proceedings (110 Ill. App. 2d 382), in both instances by a divided court. The cause now comes to this court on the granting of defendant's petition for leave to appeal.

The alleged murder occurred on Saturday, September 28, 1963, and the statements which defendant asked to be suppressed were made during the course of her interrogation by the police on Monday, September 30. After a full hearing on the motion to suppress, the trial court found the following facts upon which it based its decision: that two officers, Commander Flanagan and Lieutenant Cartan, talked to defendant at her home for about one hour, that she was not held *incommunicado*, as a doctor, a maid and several relatives were present; that during the conversation defendant's attorney was called by telephone and both defendant and Commander Flanagan talked to him; that he was told that defendant was under arrest and would be taken to headquarters for further questioning; that defendant's sister accompanied her to headquarters and remained with her during all further questioning; that defendant refused to answer any questions for the first three-quarters of an hour or hour of such resumed interrogation; that at that point she was shown a particular suitcase and she then made the statements in question; that defendant's attorney arrived at the interrogation room after the statement had been made and approximately two hours after defendant had been taken to headquarters.

From these facts the trial court reasoned that, since both Commander Flanagan and defendant had talked to her attorney and he was informed where she was being taken, the fact that he subsequently appeared at headquarters "indicates that it was the purpose of the phone call and the

purpose of the defendant, as well as the attorney, for the attorney to be present during such time that she was in custody for whatever purposes might have been indicated." The trial court then concluded that tne continued interrogation of defendant in the absence of her attorney under such circumstances deprived her of her constitutional right to counsel, that this fact is determinative of the question, that therefore "the statements made by defendant were not voluntary."

The appellate court was correct in holding that since this case was commenced prior to the effective date of *Escobedo* v. *Illinois,* 378 U.S. 478, 12 L. Ed. 2d 977, 84 S. Ct. 1758, and *Miranda* v. *Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, failure to inform defendant that she had the right to an attorney and a right to remain silent did not *per se* render her statements inadmissible. (*Johnson* v. *New Jersey,* 384 U.S. 719, 16 L. Ed. 2d 882, 86 S. Ct. 1772.) This is true in spite of the fact that defendant's new trial was held after *Miranda* and *Escobedo* had been decided, for the standards announced therein do not apply to retrials where the first trial was commenced before the effective date of those cases. (*Jenkins* v. *Delaware,* 395 U.S. 213, 23 L. Ed. 2d 253, 89 S. Ct. 1677.) Rather they are merely factors to be considered together with all other circumstances in determining the voluntariness and admission of the statements. *People* v. *Kirk,* 36 Ill.2d 292.

In conceding these principles defendant contends that other factors to be considered are illegal detention, promises that if defendant made a statement she would be released and allowed to go home and attend her husband's funeral; psychological coercion in that her will was overborne by the unlawful act of the officers in placing the suitcase before her, and finally, the deliberate deprivation of counsel by the police. She argues that the decision of the trial court was

based on the totality of these circumstances and not just the absence of her attorney and that the decision was not against the manifest weight of the evidence.

The State contends that the trial court based its decision solely on defendant's alleged deprivation of counsel and, in doing so, it erroneously misapplied the law applicable thereto. We agree. In effect, the trial court held that since the police had knowledge of the fact that defendant had talked with her attorney all further questioning of her in the absence of counsel was improper and any subsequent statements made by her must necessarily be classified as involuntary. We do not find this to be the law. To so hold would result in applying the *Miranda* standards retroactively rather than treating them as mere factors to be considered along with all other circumstances on the question of voluntariness. Under pre-*Miranda* standards detention and questioning of a person in the absence of counsel is not improper if conducted with fairness and without coercion. It is not the questioning that is wrong, nor illegal detention that is determinative, but coercion and force. (*People* v. *McFarland,* 386 Ill. 122; *People* v. *Hall,* 413 Ill. 615.) As stated in the latter case the effect of detention and questioning in coercing a confession would vary in every instance depending upon the place and length of time, the manner and extent of questioning, and, primarily, upon the individual being questioned. Age, education, experience and emotional characteristics could make questioning coercive in one case and innocuous in another. It was then held that detention, *incommunicado,* did not constitute coercion where there was no evidence of mistreatment and the accused was a mature woman, 41 years of age. In a case where the *Escobedo* but not the *Miranda* standards were applicable, the Supreme Court in *Frazier* v. *Cupp,* 394 U.S. 731, 22 L. Ed. 2d 684, 89 S. Ct. 1420, held that the questioning need not cease even where the accused stated to the police that he thought he had better get a lawyer before he talked any more, but

then did not pursue the matter and did not specifically request presence of counsel. In *People* v. *Nelson,* 320 Ill. 273, this court held that if a statement is otherwise voluntary, the fact that the accused was vigorously questioned in the absence of his attorney, friends, or relatives, would not render his statement inadmissible.

Here, there is no question that defendant was a mature individual of normal intelligence. She was questioned for no more than two hours, always in the presence of or in close proximity to friends and relatives, and, just prior to her statements, in the immediate presence of her sister. There is no evidence or claim of any mistreatment, grilling, or even vigorous questioning. Nor was there any specific request for the presence of her attorney. In fact, when her attorney did arrive, her statements were repeated by the police for his benefit and she expressly re-affirmed them. Under these circumstances we find that the trial court was in error in ruling that continued questioning of defendant in the absence of counsel *per se* made her subsequent statements involuntary.

We now proceed to defendant's argument that apart from the trial court's stated reasons for his conclusion, nonetheless, considering the totality of the circumstances, defendant's statements were not voluntary. She contends that her attorney was purposely kept waiting at the police station and was denied access to her for two hours. The trial court did not so find, stating that he did not find the evidence clear on this point. Our own review of the record indicates that the only evidence on the question was the hearsay statements of defendant and her sister that they heard the attorney make such a complaint to the police when he came into the conference room. The police denied that the attorney had been detained by them or that he made the statements attributed to him. The attorney did not testify.

Next defendant contends that psychological coercion was exercised by the police in confronting her with a suit-

case, thereby prompting her to make the statements in question. No finding was made on this point by the trial court, nor does the record reveal the contents of the suitcase, nor the statements made. However, from the previous opinions in this case it is apparent that the suitcase contained a bloody quilt and bedspread which defendant had left in a neighbor's closet sometime after the alleged murder, and that when confronted with the suitcase she said, "My God, don't open that". In effect, this was merely a confrontation of defendant with some evidence of the crime and her reaction thereto was spontaneous and obviously voluntary. Such a confrontation does not constitute coercion, for the police have a right to disclose evidence to an accused which they believe points to his guilt. See *People* v. *Hudson,* 38 Ill.2d 616, wherein this court held that informing accused that his fingerprints were found in the victim's apartment did not constitute coercion. See also *Frazier* v. *Cupp,* 394 U.S. 731, 22 L. Ed. 2d 684, 89 S. Ct. 1420, where the Supreme Court held that where the questioning was of short duration and the accused was a mature individual of normal intelligence, the fact that the police falsely represented to him that his accomplice had confessed, though relevant to the issue, was not of itself sufficient to make an otherwise voluntary confession inadmissible.

Further psychological coercion is urged in that the police allegedly promised defendant that if she made a statement she would be released, and, if not, she would be detained and not allowed to attend her husband's funeral the following day. Defendant argues that this promise is corroborated by the fact that subsequent to her statement she was released and allowed to return home with her attorney. The trial court did not make a finding on this point. Our review of the record indicates that the police categorically denied making such a promise. In any event it is clear from the sequence of events that defendant's statements resulted from her spontaneous reaction to the production of the suit-

case and her desire to explain it, and not to any alleged promise of release. That she was released suggests only that the police elected not to detain her, pending further investigation, because her statements did not constitute a confession but only indicated that she had some knowledge of the events surrounding her husband's death. Defendant's citation of authorities in support of her contention merely cite the general rule that a confession is inadmissible where it is induced by threat or promise. The one case, *Haynes* v. *Washington*, 373 U.S. 503, 10 L. Ed. 2d 513, 83 S. Ct. 1336, which she states is similar, and even milder, we find to be totally dissimilar and inapplicable here as the defendant was held *incommunicado* for five to seven days, interrogated extensively and denied the right to consult with his family or an attorney.

Summing up, we find that the decision of the trial court, finding that defendant's deprivation of counsel was determinative of the issue of the voluntariness of defendant's statements, was erroneous, and that, if based on the totality of the circumstances, such decision was against the manifest weight of the evidence, and we affirm the judgment of the Appellate Court, First District, reversing and remanding the cause for further proceedings.

*Judgment affirmed.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.