(No. 35869.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOSEPH NISCHT, Plaintiff in Error.

*Opinion filed November 30, 1961.*

FERLIC AND GANNON, of Chicago, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and JOHN T. GALLAGHER and RUDOLPH L. JANEGA, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE KLINGBIEL delivered the opinion of the court:

The defendant, Joseph Nischt, was indicted by the grand jury in the criminal court of Cook County for the crime of murder. He entered a plea of guilty and was sentenced to the penitentiary for a term of life imprisonment. A petition for relief under the Post-Conviction Hearing Act was dismissed upon the ground that it was not filed within time, but we allowed a writ of error and remanded the cause to the trial court. The State then moved to dismiss the petition upon the ground that no substantial constitutional question was presented. The motion to dismiss was sustained and the

petition was dismissed and we again allowed a writ of error and remanded the cause with directions to grant the defendant a hearing on the issues presented by his petition. Such a hearing was held and the trial court denied the petition after the hearing. We allowed a writ of error and the cause is now before us upon the brief of the defendant and the State.

In order that the issues presented on this writ of error may be clearly defined, we find it necessary to review at some length the allegations of the post-conviction petition and the previous order of this court remanding the cause for a hearing. The post-conviction petition alleged that the defendant was arrested and questioned by the police concerning the disappearance of one Rose Michaelis. It was alleged that the defendant consistently denied any knowledge of her disappearance and, after being questioned by the police, defendant was booked on a charge of disorderly conduct and released on bond. It was alleged that the following day the police officers again came to the apartment where defendant was employed as a janitor, took him down into the basement and told him that they knew that he had killed Rose Michaelis and burned her body in the furnace. It was alleged that at that time the defendant was beaten by the police and threatened with a pistol. He then made a verbal admission of guilt and was taken to the police station where, it was alleged, he was subjected to further brutality, as a result of which he signed a confession. He was later indicted for the murder of Rose Michaelis in an indictment which charged in several counts that the death occurred by beating and in other counts that the death occurred by burning in a furnace.

The petition also alleged that defendant's attorney told him that he should plead guilty because his confession would be introduced in evidence and he would receive the death penalty. According to the petition, defendant's attorney never told him that a confession coerced by brutality could

not be admitted in evidence. It was alleged that defendant's attorney gave him the impression that the State could convict him on his confession alone without advising him that under the law there must be some corroborating evidence to establish the *corpus delicti*. The petition charged that the State would have been unable to prove the *corpus delicti*, and in support of this charge the defendant made the following allegations: It was alleged that two days after the disappearance of Rose Michaelis, the police conducted a thorough search of the ashes and other material taken from the furnace in which Rose Michaelis was alleged to have been burned and found no human remains. It was learned that a quantity of ashes had been removed from the building two days before and taken to the city dump and a large force of police officers then searched the vicinity where the ashes had been dumped and removed a large quantity of debris therefrom. This debris was later inspected by an anthropologist who examined more than 18,000 bone fragments found among the refuse and identified these fragments as the bones of various birds and animals but was unable to identify any of the bone fragments as human bones. It was further alleged that about two months after the disappearance of Rose Michaelis a test was conducted by the police officers in which the head from one body and the torso, legs and arms of another were placed in the same furnace and burned. The ashes were removed from the furnace after this test and examined by an anthropologist who found several bones which he positively identified as human bones. It was alleged that during the course of this test the furnace was operated under forced draft so that there was more intense heat than would ordinarily be used, and it was found as a result of this test that in spite of this abnormally high heat, the bones would not burn unless they were constantly raked into the center of the furnace where the heat was highest.

It was alleged that the defendant's confession stated

that he only returned to the furnace one time after placing the body therein and found that the body had been completely burned. The confession made no mention of stirring up the ashes so as to draw the bones at the edge toward the center. It was alleged that this test conclusively proved that the body could not have been burned in the furnace since no bones were found in the ashes removed from the furnace at the time Mrs. Michaelis disappeared, and the later test showed that there would have been bones therein unless the furnace was operated at an abnormally high temperature and the bones were constantly raked into the center of the furnace. It was alleged that this information was known to the prosecutor but was not known to the defendant or his counsel, and it was alleged that the suppression of this evidence which, it is claimed, would establish defendant's innocence, was a violation of defendant's constitutional right to a fair trial. In our order remanding the cause for a hearing, we held that defendant's allegations with respect to the coerced confession and his allegation with respect to the suppression of the evidence required a hearing. These were the only issues properly before the trial court at the hearing.

In defendant's brief on this writ of error the defendant relies upon these issues and also claims that the defendant's counsel was ineffective and incompetent. Since this issue was not presented to the trial court it is not properly before us upon this writ of error. Furthermore, the record shows that the defendant was represented at the time of his conviction by counsel of his own choice, and under these circumstances defendant's allegation that his attorney was incompetent failed to present an issue requiring a hearing under the Post-Conviction Hearing Act. *People* v. *Cox,* 12 Ill.2d 265, 271.

The brief also claims that there was no evidence to show that a crime had ever been committed. While this allegation is indirectly involved in connection with the charge that the State suppressed certain evidence, the allegation that no

crime was, in fact, committed, does not in itself present a substantial constitutional question calling for relief under the Post-Conviction Hearing Act. We have held in many cases that a plea of guilty admits all of the essential allegations of the indictment, and the State is not obligated to make any proof whatsoever. (*People* v. *Terry,* 12 Ill.2d 56; *People* v. *Baxton,* 10 Ill.2d 295). In the *Baxton* case we specifically held that an allegation that the State failed to prove the *corpus delecti* had no merit where the defendant had pleaded guilty.

The issues before us therefore are, first, whether the evidence at the post-conviction hearing established the defendant's charge that his confession was coerced by police brutality, and second, whether the State was guilty of suppressing evidence favorable to the defendant, which suppression served to induce the defendant's plea of guilty.

We first consider the charge that defendant's confession was the result of police brutality. The defendant testified at the hearing that he was beaten by two police officers at the apartment building at the time of his arrest. The defendant did not know the names of these officers. He testified that as a result of this beating he verbally admitted his guilt. He testified that he was taken to the police station at about 2:00 o'clock in the morning where he was continuously questioned, threatened and beaten. He testified that as a result of this brutality he signed a confession and also went out with the police officers to the apartment building where he participated in a re-enactment of the crime.

Three police officers testified that they arrested the defendant in the early morning hours at the apartment where he was employed. Each of these officers denied that they beat or threatened the defendant in any manner at that time. These officers also testified that they were present at the police station during the time when the defendant was being questioned and they all testified that the defendant was not threatened or subjected to any brutality. Another

police officer who was not present at the time of the arrest but was present in the station while the defendant was being questioned, testified that he observed no brutality or threats. The assistant State's Attorney, who took the written statement from the defendant, testified that he had exercised no force against the defendant, nor had he observed any other person abuse the defendant. He also testified that he observed the defendant's appearance at the time the statement was taken and did not notice any bruises or other marks indicating that the defendant might have been beaten.

We are of the opinion that the defendant's unsupported testimony concerning the alleged police brutality was insufficient to establish his charge, in the face of the positive denials by all the police officers who were concerned with obtaining the confession.

We turn now to a consideration of the charge that the State suppressed evidence which would have established defendant's innocence, and his related charges that his plea of guilty was entered while he was ignorant of this evidence and that he would not have pleaded guilty had he been informed of this evidence. In his brief the defendant cites numerous cases holding that a defendant should be given leave to withdraw his plea of guilty if he makes any showing that he has a defense worthy of consideration. While the rule set forth in these cases is well established, it is not, in our opinion, applicable to the present case, for defendant did not, at any time make a motion for leave to withdraw his plea of guilty and it was not until many years after his conviction that the present proceedings were instituted. This, therefore, is not a case involving the discretion of the trial judge in permitting a defendant to withdraw his plea of guilty. This case, arising under the Post-Conviction Hearing Act, involves only the issue of whether any substantial constitutional right of the defendant was violated by an alleged suppression of evidence favorable to the defendant.

The fact that no bones or other human remains were found in the furnace shortly after the disappearance of Rose Michaelis was widely publicized in all of the Chicago newspapers and was known to defendant's counsel. This fact is apparent from a transcript of the argument of defendant's counsel on a motion to quash the indictment. This argument was made in June, about three months after the crime and about six months before defendant's plea. In that argument, counsel referred to the search of the furnace and the city dump and stated that the fact that no human remains were found was reported to every newspaper in the city of Chicago. Counsel stated that this information was so widely known that the court should take judicial notice of it. The defendant testified at the post-conviction hearing that he was never told by his attorney that there were no bones found and testified that his attorney had told him the police had discovered bits of bone in the furnace. At the time of the post-conviction hearing, the attorney who represented the defendant at the time of his conviction was dead, and therefore the only evidence as to what the attorney told the defendant was defendant's own testimony. In our opinion defendant's testimony on this point is unworthy of belief in view of the wide publicity to the effect that no human remains were found in the furnace.

The defendant admitted at the hearing that during the time he was confined in jail, between the time of the indictment and the time of his conviction, he had access to his family, and that his mother and father frequently visited him. It is inconceivable that he would not have been informed of the newspaper reports by his parents. Furthermore, his actual knowledge of these facts is of little legal consequence, for it is undisputed that his attorney had knowledge thereof and the knowledge of the attorney must be imputed to the defendant.

The defendant also contends that he was never informed of the test which was later conducted in which the au-

thorities attempted to burn portions of human bodies in the furnace. There is no testimony in the record positively indicating that the defendant had knowledge of this test, but the record is clear that defendant's counsel had such knowledge. In his argument on the motion to quash, counsel referred to the experiment and stated that in the experiment the residue of three cadavers was placed in the furnace and burned for 53 hours in a forced fire, and after 53 hours in the furnace the authorities found upwards of 21 pieces of bone. At the post-conviction hearing, the assistant State's Attorney, who was in charge of the defendant's prosecution, testified that he had spoken with defendant's attorney on several occasions, and in the course of these conversations the experiment was discussed. The assistant State's Attorney stated that it was his recollection that the results of the experiment were published in the newspapers. The attorney testified that defendant's attorney asked him about the experiment and he told defendant's attorney that such an experiment had been performed and that there were human bones found in the furnace after the experiment. It is therefore quite clear that defendant's attorney had knowledge of the experiment. There is some question as to whether all of the details of the experiment were disclosed to defendant's attorney, and the assistant State's Attorney admitted that the anthropologist's report on the experiment had never been turned over to defendant's attorney. However, the failure to turn over the report or to disclose all of the details of the experiment did not, in our opinion, amount to a suppression of evidence. It is evident that defendant's attorney knew, at least six months before defendant's plea of guilty, that no human bones were originally found in the furnace, and also knew that human bones were found therein after the experiment. These facts in substance are the facts which defendant contends were improperly suppressed by the State. Again the defendant testified that his attorney did not disclose these facts to him and here again this testi-

mony is undisputed because his attorney was dead at the time of the post-conviction hearing. The record is silent as to whether the defendant was present in court at the time of the argument on the motion to quash. In the normal course of judicial administration, he would have been present and would thereby have obtained knowledge of the facts which he alleges were suppressed. However, even if he was not present, and if we assume the truth of his unlikely testimony that his attorney never informed him of these facts, we are of the opinion that the State cannot be charged with an improper suppression of evidence. Defendant was represented by counsel of his own choice, and the assistant State's Attorney did disclose these facts to defendant's attorney. Having made such disclosure to defendant's attorney, the State was under no obligation to disclose these facts to defendant himself.

The record shows that when the case was called for trial the defendant persisted in his plea of not guilty, and several days were spent in selecting a jury and two days were taken in hearing testimony on behalf of the State. The record then shows that defendant's counsel made a motion for leave to withdraw the plea of not guilty and submit a plea of guilty. At that time, while defendant was present in the courtroom, defendant's counsel stated that a short time befor ·the motion was made the defendant told his attorney that he did not want to take the witness stand because he was conscience stricken and could not face the court and jury. Counsel stated to the court that for the first time in approximately 8 months that he had represented the defendant, the defendant told him that he had killed Mrs. Michaelis as charged in the indictment. Counsel told the court that he had advised the defendant that if he would not take the witness stand there would be dire consequences and that if he did take the witness stand he should not underestimate the experience and intelligence of the assistant State's Attorney who would cross-examine him. Counsel stated that

he advised the defendant that if the assistant State's Attorney was able to expose any untruthfulness on his part, the result would be fatal. According to counsel's statement, the defendant then repeated his statement that he was guilty and counsel told him that, in view of that statement, his duty to the court and his profession would require that a plea of guilty be entered. Counsel stated to the court that he told the defendant that it had been his experience that courts usually granted some leniency to a defendant who freely and openly admitted his guilt and threw himself on the mercy of the court and he told defendant that he thought he might be able to prevail upon the State's Attorney to waive the imposition of the death penalty and make a recommendation of a lesser penalty. Counsel stated to the court that he then had a conference with the assistant State's Attorney in charge of the case and they agreed to make a recommendation of life imprisonment. Counsel told the court that he then had a conference with the defendant, the defendant's father and the defendant's wife, and that for the first time since the defendant had been taken into custody he admitted to his wife and his father that he was guilty. Following this conference, the defendant, his wife and his father, all authorized counsel to move to withdraw the plea of not guilty and enter a plea of guilty. The record shows that the court allowed the motion and then admonished the defendant of the consequences of his plea. The defendant persisted in his plea of guilty and the plea was accepted and the life sentence was imposed. Following this, the defendant's confession was introduced in evidence in aggravation.

In view of the fact that the results of the original search of the furnace and the results of the experiment were disclosed to counsel of defendant's own choice, and in view of the further evidence in the record that the defendant withdrew his plea of not guilty because of a guilty conscience, after admitting his guilt to his attorney, his wife, and his

father, we are of the opinion that defendant's charge that his plea of guilty was induced by an improper suppression of evidence cannot be sustained.

The judgment of the criminal court of Cook County is therefore affirmed.

*Judgment affirmed.*