(No. 47492.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. STEVEN NICHOLS *et al.*, Appellees.

*Opinion filed May 28, 1976.—Rehearing denied June 28, 1976.*

UNDERWOOD, RYAN and CREBS, JJ., dissenting.

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (James B. Zagel and Jayne A. Carr, Assistant Attorneys General, and Laurence J. Bolon and John T. Theis, Assistant State's Attorneys, of counsel), for the People.

James J. Doherty, Public Defender, of Chicago (Robert B. Thompson, Ronald P. Alwin, and Jack L. Uretsky, Assistant Public Defenders, of counsel), for appellees.

MR. CHIEF JUSTICE WARD delivered the opinion of the court:

Steven Nichols, Marshall McWilliams, the defendants here, and Willie Chandler were indicted in the circuit court of Cook County in December of 1970 for rape, attempted rape, burglary and armed robbery. Following a jury trial, Nichols and McWilliams were convicted of attempted rape, burglary and armed robbery and acquitted of rape; Chandler was acquitted of all charges. Nichols and McWilliams were sentenced to concurrent terms of 8 to 12 years for attempted rape, 25 to 35 years for burglary and 25 to 35 years for armed robbery. The appellate court reversed the convictions and remanded (27 Ill. App. 3d 372), and we granted the People's petition for leave to appeal.

The factual circumstances of this case are set out at length in the opinion of the appellate court, and consequently we will state only the facts required for a

discussion of the issues presented to us. The indictments were based on crimes committed by three burglars in an invasion of a ground-floor apartment in Chicago in the early morning hours of September 6, 1970. The evidence shows that one of the burglars entered the apartment, herded the three women occupants into a bedroom and was joined shortly thereafter by the other two burglars. It appears from the evidence that at least one of the intruders may have gained entrance to the apartment by climbing through a window. McWilliams was arrested on November 18, 1970, after two of the victims had identified him from a photograph, and Nichols was arrested on December 6, 1970, after one of the victims identified him from a photograph.

The record shows that when the case was presented to the grand jury in December of 1970 one of the investigating police officers was asked: "Was physical evidence recovered at the scene of the incident on September 6, 1970?" and that he answered: "Yes, below the window of the apartment where entry was made, a shoe was found."

On February 7, 1971, the defendants moved to have the State produce all evidence in its possession that might be favorable to the defendants which was material to the questions of their guilt or innocence. The motion asked to have produced "all physical evidence that is in the State's possession and control which pertains to this case." On May 20, 1971, the motion was allowed, and on May 24, 1971, in a colloquy with counsel the trial court inquired, "What physical evidence does the State have?" Chandler's attorney responded, "I don't know. I looked at the Grand Jury testimony and I see where supposedly one of the assailants lost his shoe at the premises." The following morning the prosecutor brought into open court a sealed evidence box and two inventory envelopes. After examining the materials, counsel for McWilliams and Nichols inquired: "Where is the shoe?" One of the assistant State's Attorneys answered, "We are not going to introduce the

shoe." Counsel for Chandler then asked, "Where is it? It is mentioned in the Grand Jury testimony. We want to take a look at it." The assistant State's Attorney stated, "It doesn't pertain to your man, anyway." The shoe was never produced for inspection, but the defendants were given a copy of a crime laboratory report prepared following an examination of the shoe.

The State contends that it did not suppress evidence that was favorable to the defendants. However, it is not denied that the shoe was found outside the apartment window by the police, nor is there any claim that the People were unable to produce it for the defendant's inspection. Too, it is clear that the defendants made a timely motion for the production of physical evidence, that the motion was allowed and that the State failed to comply with the court's order so far as the shoe was concerned, even when the shoe was specifically inquired about in open court. In *Brady v. Maryland,* 373 U.S. 83, 87, 10 L. Ed. 2d 215, 218, 83 S. Ct. 1194, it was held that a violation of due process occurs when a prosecutor, regardless of motive, suppresses evidence, material to the question of an accused's guilt or innocence, after there has been a request for its production. For there to have been a violation of the right to due process, it must be shown that the evidence was suppressed following a request for it by the defendant, that the evidence was favorable to the defendant, and that it was material. *Moore v. Illinois,* 408 U.S. 786, 794-95, 33 L. Ed. 2d 706, 713, 92 S. Ct. 2562.

The State says that under the holding in *Brady* there is no suppression of evidence where, as here, "the defense is aware of the evidence, possesses the laboratory reports on it, and after an initial request for production makes no effort to pursue the matter further." It cites *People v. Smith,* 46 Ill.2d 430, *People v. Hudson,* 38 Ill.2d 616, and *People v. Nischt,* 23 Ill.2d 284, in claimed support of its position that there can be no suppression of evidence when the defense is aware of the existence of the evidence. But

those holdings are distinguishable. In them it was held that there had not been improper suppression of evidence when, though defense counsel was aware prior to trial of the existence of the evidence, no effort was made to have the evidence produced. For example, in *People v. Smith,* the defendant, who had been convicted of rape, contended that the failure of the State to produce his pants and undershorts, which the State had sent to the crime laboratory for examination, violated his right to due process. In rejecting his claim this court said: "Defendant knew that his shorts and pants had been sent to the crime laboratory for examination. He had the right and the opportunity, had he desired to do so, to demand that they be produced in court together with any laboratory reports or findings resulting from that examination. Having failed to do so, he cannot now be heard to contend that the prosecution is guilty of deliberate suppression of evidence favorable to him \*\*\*." (46 Ill.2d 430, 433.) The circumstances of this case are completely different. The defendants made a timely motion for production, and the State failed to comply with the court's order to produce, so far as the shoe was concerned. Even when the shoe was specifically requested, the prosecution did not produce it or attempt any explanation for its nonproduction. It appears, at least from this distance, that the defendants' demands for the shoe's production could have been more forcefully asserted when the prosecution did not comply with the court's direction, but considering all of the circumstances we judge the nonproduction of the shoe must be considered a suppression.

We would parenthetically observe that our Rule 412(c) (Ill. Rev. Stat. 1973, ch. 110A, par. 412(c); 58 Ill.2d R. 412(c)) which was promulgated after the date of the defendants' trial provides that the prosecution must disclose to defense counsel "any material or information within its possession or control which tends to negate the guilt of the accused \*\*\*."

We are not persuaded by the State's contention that it was not shown that the shoe may have been material and favorable to the defendants. The defendants denied the crimes and presented defenses of alibi. They sought to demonstrate that the victims had been mistaken in their identification of them and that other persons had committed the crimes. The shoe was found outside one of the windows of the apartment, and grand jury and trial testimony suggested that one of the intruders may have entered through this window. Too, during the course of the trial, a police evidence technician testified that he had found an identifiable palm print on a wall near this window and that the print was not one of the defendants or any of the victims. The shoe must be considered as evidence favorable to the defendants and should have been turned over to them under the court's order. *People v. Flowers*, 51 Ill.2d 25; *People v. Murdock*, 39 Ill.2d 553; *People v. Cole*, 30 Ill.2d 375.

*People v. Hoffman*, 32 Ill.2d 96, has resemblance to this case on the question of materiality. There the defendant was charged with murder. He and the victim had registered as man and wife at the hotel where the body was found, but he claimed that he was not in the room when the murder occurred. He contended that a pair of shorts found by the police in the room were not his and that the State's failure to produce this evidence upon his request amounted to a suppression of evidence. In agreeing with the defendant's contention, this court said: "And contrary to the assertion that the defendant did not show the materiality of the shorts, it appears obvious from the very item, its condition and where it was found, that it was material. They were material enough to be noted on the police report and are material enough to require their production upon defendant's request so he could inspect them for laundry marks or other clues." (32 Ill.2d 96, 99.) See also *People v. Flowers*, 51 Ill.2d 25; *People v. Cole*, 30 Ill.2d 375.

One evening during the course of the selection of the jury the defendants were taken from their cells and photographed. The defendants' attorneys were not notified of the proposed photographing, nor were they present when the photographs were taken. It was not shown that any use was made of the photographs by the prosecution. The appellate court properly held there had been an improper interference with the defendants' right to counsel. We would note, too, that our Rule 413(b) (Ill. Rev. Stat. 1973, ch. 110A, par. 413(b); 58 Ill.2d R. 413(b)), which was not in effect at the time of the defendants' trial, provides:

> "Whenever the personal appearance of the accused is required for the foregoing purposes [including the accused's being posed for photographs], reasonable notice of the time and place of such appearance shall be given by the State to the accused and his counsel, who shall have the right to be present."

For the reasons given, the judgment of the appellate court is affirmed, and the cause is remanded for a new trial.

*Affirmed and remanded.*

MR. JUSTICE UNDERWOOD, dissenting:

A majority of my colleagues hold the failure of the State to deliver the shoe and the taking of defendants' pictures on an evening during the selection of the jury, without notice to their counsel, necessitate a reversal of the convictions and a retrial. With that holding I simply cannot agree.

The court relies heavily upon *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194. The Supreme Court there said:

> "We now hold that the suppression by the prosecution of evidence *favorable to an accused upon request* violates due process where the evidence is *material* either to guilt or to punish-

ment, irrespective of the good faith or bad faith of the prosecution." (Emphasis added.) (373 U.S. 83, 87, 10 L. Ed. 2d 215, 218, 83 S. Ct. 1194.)

*Moore v. Illinois* (1972), 408 U.S. 786, 794-95, 33 L. Ed. 2d 706, 713, 92 S. Ct. 2562, restated the *Brady* holding, emphasizing the importance of "(a) suppression by the prosecution after a request by the defense, (b) the evidence's favorable character for the defense, and (c) the materiality of the evidence." In *Brady* a suppression was found to have occurred. But there is a profound and crucial difference between *Brady* and this case—in *Brady* the existence of the suppressed evidence was unknown to the defense until after trial, conviction, sentence and affirmance. Here, it is undisputed that the defense not only knew of the existence of the shoe, but they had also been given a copy of the report by the crime laboratory of the result of its inspection of the shoe, and, in these circumstances, *Brady* is simply inapposite. *United States v. Ruggiero* (2d Cir. 1973), 472 F.2d 599; *United States ex rel. Wax v. Twomey* (7th Cir. 1972), 465 F.2d 352.

The relevant portions of the record relating to the chronology of requests for and discussion of the shoe are set forth in the well-reasoned dissenting opinion of Mr. Justice Stamos in the appellate court:

"Defendants' discovery motion was granted with respect to the production of physical evidence. In response, the State filed an answer listing the physical evidence as:

'Clothing, slides, smear test apparatus, photographs, guns and license plates.'

The next reference to the physical evidence came during a hearing on a pretrial motion. Mr. Downs, attorney for acquitted defendant Chandler said:

'Judge, I would make a motion to inspect physical evidence in this particular case. It is somewhat difficult from the list of

witnesses and looking at the Grand Jury testimony, that—

THE COURT: What physical evidence does the State have?

MR. DOWNS: I don't know. I looked at the Grand Jury testimony and I see where supposedly one of the assailants lost his shoe at the premises. According to the lab reports I see a fair amount of testing done with the shoe ***.'

The matter was then dropped and not raised again until the next day when all attorneys inspected the physical evidence in the presence of the court. At that point, Mr. Mehl, attorney for defendants McWilliams and Nichols asked:

'Where is the shoe?

MR. KAVANAUGH [Assistant State's Attorney] : We are not going to introduce the shoe.

MR. DOWNS: May we look at the shoe?

MR. KAVANAUGH: We don't have it.

MR. DOWNS: Where is it? It is mentioned in the Grand Jury testimony. We want to take a look at it. Some police officer has it.

MR. KAVANAUGH: It is not listed in our physical evidence.

MR. DOWNS: It is mentioned in the Grand Jury testimony.

MR. KAVANAUGH: It doesn't pertain to your man, anyway.'

There is not another word in the record regarding that shoe until now on appeal." (27 Ill. App. 3d 372, 393-94.)

Had defendants considered the shoe, itself, material evidence favorable to them, all that was necessary was a

simple request to the court to compel its production. Instead, for reasons unknown, but apparently satisfactory to them, they apparently abandoned the subject. A possible explanation for doing so may lie in the content of the laboratory report (which is not in the record) of the examination of the shoe, which may have convinced defense counsel that further pursuit of the matter would not be beneficial.

Apart from the fact that in *Brady* defense counsel was not even aware the suppressed evidence existed, this case fails to meet the additional requirements that the evidence be shown to be material and of a character favorable to defendants. That, in my judgment, simply has not been established. There is not complete certainty as to the precise location in which the shoe was found, and its ownership and whether it would help or hinder defendants are totally speculative.

In at least three cases this court has expressly refused to overturn convictions where the existence of allegedly suppressed evidence was known to defense counsel. (*People v. Smith* (1970), 46 Ill.2d 430; *People v. Hudson* (1968), 38 Ill.2d 616; *People v. Nischt* (1961), 23 Ill.2d 284.) While the majority opinion cites *People v. Flowers* (1972), 51 Ill.2d 25, *People v. Murdock* (1968), 39 Ill.2d 553, *People v. Hoffman* (1965), 32 Ill.2d 96, and *People v. Cole* (1964), 30 Ill.2d 375, as authority for its holding here, I do not regard those cases as either compelling or persuasive in the circumstances of this case. In *Flowers* the court *denied* the requested discovery, the refused evidence was characterized by the court as "might be strong circumstantial evidence" on defendant's behalf, and the State there apparently equivocated as to whether the requested evidence was in its possession. In *Murdock* the existence of the evidence was intentionally not revealed by the State to defense counsel despite its materiality and the fact that it clearly would have supported defendant's

theory of the occurrence. *Hoffman* involved a persistent effort by the State to prevent defense counsel from inquiring as to the existence of the allegedly suppressed evidence, and in *Cole* the trial court denied defendant access to statements and reports which allegedly impeached the complainant. These cases seem to me inapposite to the facts here where the defense knew the evidence exists, had a report of the results of a laboratory examination of the evidence, and apparently decided not to ask the court to insist upon its production. *Gollaher v. United States* (9th Cir. 1969), 419 F.2d 520, *cert. denied,* 396 U.S. 960, 24 L. Ed. 2d 424, 90 S. Ct. 434.

The fact that the defendants were taken from their cells one evening during the jury selection process and photographed without notice to defense counsel is apparently also a factor in the majority's decision to reverse these convictions. There is nothing before us, except the fact that defendants were photographed by, or at least with the cooperation of, law enforcement personnel, to suggest that any use was made by the prosecution of the resulting pictures. That they may have been used for the purpose of refreshing the recollection of prosecution witnesses in this case is, at most, pure speculation. And, even assuming this was done, reversal would not necessarily be required if the trial identification of the defendants could fairly be said to have had an independent origin. (*People v. Fox* (1971), 48 Ill.2d 239, 245.) I note, too, that this point was not thought by defendants' appellate counsel of sufficient significance to warrant raising it in the appellate court.

It seems to me that the opinion of the majority does here what was warned against in *Brady.* The Supreme Court there approvingly said:

> "The principle of *Mooney v. Holohan* [(1935), 294 U.S. 103, 79 L. Ed. 791, 55 S. Ct. 340,] is not punishment of society for misdeeds

of a prosecutor but avoidance of an unfair trial to the accused." (373 U.S. 83, 87, 10 L. Ed. 2d 215, 218, 83 S. Ct. 1194.)

Of course the prosecutor here should have produced the shoe in response to the defendants' request, and, admittedly, prior notice of the photographing should have been given defense counsel as our rule now provides. But the question before us is not what should have been done, but the effect of what was not done. Without greater reason than has been here shown to believe that defendants have been prejudiced by an unfair trial, I am unwilling to punish society for the prosecutor's omissions.

I would reverse the appellate court and affirm the convictions.

RYAN and CREBS, JJ., join in this dissent.