2026 IL App (3d) 250264

Opinion filed April 8, 2026

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| THE PEOPLE OF THE STATE OF ILLINOIS, | Appeal from the Circuit Court of the Twelfth Judicial Circuit, Will County, Illinois. |
|---|---|
| Plaintiff-Appellee, | |
| v. | Appeal No. 3-25-0264 Circuit No. 23-CF-2302 |
| MICHAEL SOUTHALL, | The Honorable Vincent F. Cornelius, |
| Defendant-Appellant. | Judge, Presiding. |

_____

JUSTICE ANDERSON delivered the judgment of the court, with opinion.
Justice Peterson and Justice Davenport concurred in the judgment and opinion.

_____

**OPINION**

¶ 1        Defendant Michael Southall attempted to set fire to a home and to strangle his son and his son's mother. The State charged him with attempted residential arson under sections 8-4 and 20-1(b) of the Criminal Code of 2012 (Code) (720 ILCS 5/8-4, 20-1(b) (West 2022)), attempted arson (*id.* §§ 8-4, 20-1(a)(1)), three counts of aggravated domestic battery (*id.* § 12-3.3), two counts of domestic battery (*id.* § 12-3.2(a)(2)), aggravated battery (*id.* § 12-3.05(a)(5)), aggravated assault (*id.* § 12-2), and resisting a peace officer (*id.* § 31-1). Prior to a bench trial, the aggravated battery and aggravated assault charges were dismissed. The trial court convicted Southall of all other

counts with the exception of resisting a peace officer, of which he was found not guilty. Southall appeals his convictions, arguing that the Will County Sheriff's Office policy of clearing and destroying flammable evidence retrieved from a crime scene violated his right to due process under federal and state law, as well as Illinois Supreme Court Rule 412 (eff. Mar. 1, 2001). Southall also argues that the State failed to prove that he either had the specific intent to commit arson or that he took a substantial step towards committing arson. Lastly, he argues that his domestic battery convictions should be vacated under the one-act, one crime rule. We disagree that defendant's right to due process was violated or that the State failed to prove him guilty of attempted residential arson. We agree that his domestic battery convictions should be vacated under the one-act, one-crime rule. Accordingly, we affirm in part and vacate in part.

¶ 2                                   I. BACKGROUND

¶ 3        During pretrial proceedings, defendant waived his right to counsel and proceeded *pro se*. Prior to trial, defendant filed "Defendant's Response to Discovery," which stated:

> "The key element for the arson charges (assumed lighter fluid was used from witness statements) lighter fluid was not logged as evidence and only the container which was also not logged as evidence retrieved from the scene was only dusted for fingerprints which only a partial was recovered and then was destroyed. Due to the container which was assumed to be lighter fluid by the state was never tested because if it was it would have shown it contained water."

¶ 4        At defendant's bench trial, Gail Horton testified that she owned a home on East Cass Street, Joliet, Illinois. Defendant is the boyfriend of her granddaughter and the father of her great-grandchildren. Horton did not give permission to defendant to set her house on fire on December 29, 2023.

2

¶ 5    M.S., defendant's son, testified that he was 15 years old on December 29, 2023. At that time, M.S. lived with his mother, grandmother, and aunt in his grandmother's house on East Cass Street. Defendant was living in his van, which was typically parked on the street outside of his grandmother's home.

¶ 6    On December 29, 2023, M.S. watched a movie with defendant in defendant's van outside of the home. After the movie, defendant told M.S. that he had to choose between staying with him in the van for a few weeks or he could go back inside. However, if he went back inside the home, defendant threatened that he could easily kill M.S. and his mother and "could easily get something to burn the house down with." M.S. went inside the house, and defendant left the area in his van.

¶ 7    M.S. informed his mother of the conversation with defendant, and defendant returned to the home approximately 10 to 20 minutes later. M.S.'s mother went outside to speak with defendant and then yelled for M.S. to call 911. While looking out the window, M.S. observed liquid "hitting above the window," which M.S. believed to be a flammable liquid.

¶ 8    While calling 911, M.S.'s mother came into the house, struggling with defendant, attempting to keep him from entering the home. Defendant forced his way into the home, and M.S. observed defendant strangling his mother with both hands around her neck. M.S. yelled at defendant to stop and struck defendant with his phone five or six times. Defendant then released his mother, grabbed M.S., slammed M.S. on the kitchen table, and began strangling M.S. with both hands on his neck. M.S.'s mother was able to get defendant off of M.S., and M.S. left the kitchen. A short while later, M.S. observed defendant in the kitchen with a knife. Police officers arrived and eventually took defendant into custody. Following the incident, M.S. observed a red mark around his neck and liquid sprayed on the side of the home.

¶ 9          Sarah Walker testified that she lived at her grandmother's home on East Cass Street on December 29, 2023. Defendant and Walker have three children who also live at the home on East Cass Street. At that time, defendant was living in his van and was frequently parked on the street in front of the home.

¶ 10          On December 29, 2023, Walker's son, M.S., came into the home after spending approximately an hour with defendant in his van in front of the home. M.S. was agitated and indicated he had argued with defendant. Defendant said he wanted M.S. to stay with him in the van for the remainder of M.S.'s Christmas break, and if he didn't, defendant was going to do something. M.S. told his mother that defendant threatened to come back, set the house on fire, and kill him and/or her.

¶ 11          Walker called defendant, but defendant did not answer his phone. Approximately 10 minutes later, defendant called Walker back. She observed him walking toward the home. Defendant appeared agitated; pulled a large white container, labeled Kingsford Charcoal Lighter, from his pocket; and started to spray the liquid from the container on the side of the home. When Walker approached defendant, he sprayed her with the liquid, from her face down to her knees. The liquid entered her eyes. When Walker sneezed and tried blowing her nose, she could "taste the fluid," which tasted like lighter fluid.

¶ 12          Walker and defendant struggled, and Walker observed a lighter in defendant's hand. Defendant "clicked" the lighter twice at Walker. Walker then felt the lighter press against her ribcage while defendant attempted to ignite it. Walker was able to grab the lighter, breaking it. Defendant grabbed Walker's shoulders and then moved his hands around her neck. Approximately a minute later, defendant let go of Walker's neck. Walker was able to get up, and defendant again placed both hands around her neck and choked her. Defendant let go of Walker and entered the

4

home. Walker attempted to stop defendant from entering the kitchen, at which time defendant grabbed her, threw her to the floor, and choked her with both hands around her neck.

¶ 13 Walker saw M.S. hitting defendant with his phone. Defendant then released Walker, grabbed M.S., threw him on the kitchen table, and started to choke him. Defendant released his grip on M.S.'s neck after Walker stuck her fingers in defendant's eyes. M.S. fled the kitchen, and defendant took a knife from a drawer in the kitchen. Walker blocked defendant from entering the dining room. The police arrived and took defendant into custody. Walker later observed redness around her neck, and paramedics flushed her eyes. Walker's eyes were irritated, her left eye was "foggy," and her eyes were watering most of the night. Her main "discomfort" was the smell and burning in her sinuses.

¶ 14 Deputy Mark Tokarz, of the Will County Sheriff's Office, testified that he and three other deputies responded to the East Cass Street home on December 29, 2023. When he arrived, he observed a fluid sprayed on the home and deck and a man inside the home brandishing a knife. Once at the back door, he observed defendant with a knife as well as M.S., Walker, and Horton. Tokarz asked defendant to drop the knife multiple times, but defendant failed to respond or drop the knife. The other three deputies arrived at the back door and also asked defendant to drop the knife. Defendant did not drop the knife and told the deputies to shoot him. Deputy Stachowicz deployed his taser, which bounced off defendant's sweatshirt. Deputy Sari deployed his taser, striking defendant in the left upper thigh, causing defendant to go down and drop the knife. Defendant was taken into custody.

¶ 15 While waiting outside with defendant, Deputy Tokarz asked defendant if he hurt anyone. He replied, "probably." Defendant was evaluated at the scene by the East Joliet Police Department and transported to the hospital.

5

¶ 16 Deputy Tokarz observed redness across M.S.'s and Walker's necks. Deputy Tokarz also found a broken lighter and white bottle of liquid, identified as Kingsford Charcoal Lighter. Deputy Tokarz testified that, after observing a liquid sprayed on the home and bottle of liquid, "we put two and two together, and basically that was [the charcoal fluid] what was sprayed all over" the home.

¶ 17 Deputy Richard Williford, of the Will County Sheriff's Office's Crime Scene Investigation Unit, testified that he was dispatched to the East Cass Street home to collect evidence. Deputy Williford observed moisture on the home, portions of a broken lighter, and a container of lighter fluid along the west side of the home. Deputy Williford collected the container and lighter. At the evidence unit, Deputy Williford attempted latent processing of the container but, given its presumably flammable contents, he did not retain it in the vault because there was no safe way to do so. Because there is no safe way to store a flammable liquid, such evidence is processed for latent prints, photographed, and then destroyed. Deputy Williford did not test the contents of the container, but he considered it flammable because the container was identified as containing a flammable liquid. Deputy Williford inventoried the pieces of the broken lighter recovered at the scene, photographed them, and retained them in the vault.

¶ 18 Prior to closing arguments, defendant filed a motion to dismiss based on the destruction of evidence. Defendant argued that the container was filled with water, so there was no evidence of intent or ill-will or bad faith. The trial court denied the motion, finding the basis of the motion was not a proper ground for a motion to dismiss.

¶ 19 The trial court found defendant guilty of attempted residential arson. The trial court concluded that—based on defendant's statements to M.S., the spraying of the liquid on the home, the container being identified as Kingsford Charcoal Lighter, and Walker's reaction to the

6

chemical after it was sprayed on her body—defendant did take a substantial step toward the commission of arson to Horton's home and attempted to set fire to that home. Similarly, defendant's threats to M.S., spraying the home with a chemical liquid from a container identified as Kingsford Charcoal Lighter, and the presence of the lighter, demonstrated defendant was guilty of attempted arson.

¶ 20    The trial court found defendant guilty of aggravated domestic battery of M.S. and Walker for strangling M.S. inside the home and for pressing his fingers around Walker's throat, causing her not to breathe or speak, both outside and inside the home. The trial court further found defendant guilty of two counts of domestic battery of Walker by making physical contact of an insulting or provoking nature by grabbing her body and by pouring a liquid on her body. The trial court found defendant guilty of domestic battery by grabbing M.S., his minor son, about the body. The trial court found defendant not guilty of resisting arrest.

¶ 21    Defendant filed a "motion to vacate judgment for materially exculpatory evidence destruction" and a "motion for relief." In both of the motions, defendant argued that the destruction of the charcoal fluid container violated his right to due process. The trial court denied both motions. Defendant also filed a motion for new trial, which was denied. In May 2025, the court entered judgments of conviction for the two domestic battery charges (count VII and count XI), and sentenced defendant to 12 years' imprisonment for attempted residential arson (count I) and 5 years for each count of aggravated domestic battery (counts II, III, and IV), all to be served concurrently.

¶ 22                                    II. ANALYSIS

¶ 23    Defendant seeks to reverse his conviction for attempted residential arson under sections 8-4 and 20-1(b) of the Code (720 ILCS 5/8-4, 20-1(b) (West 2022)). Defendant argues that the

7

destruction of the charcoal fluid container by the Will County Sheriff's Office violated his due process right to a fair trial under federal law, state law, and Illinois Supreme Court Rule 412 (eff. Mar. 1, 2001). He further argues that his attempted residential arson conviction should be reversed because the evidence at trial was insufficient to prove guilt beyond a reasonable doubt. Finally, defendant argues that his domestic battery convictions, counts VII and XI, should be vacated under the one-act, one-crime rule.

¶ 24                                A. Violation of Due Process Right to a Fair Trial

¶ 25        Whether a discovery violation has occurred is a question of law, reviewed *de novo*. *People v. Hood*, 213 Ill. 2d 244, 256 (2004). Similarly, whether a defendant was denied due process is also a question of law, reviewed *de novo*. *People v. Basile*, 2024 IL 129026, ¶ 24.

¶ 26                                    1. Violation of *Brady v. Maryland*

¶ 27        Defendant argues that the Will County Sheriff's Office violated his right to due process under *Brady v. Maryland*, 373 U.S. 83 (1963), by destroying the charcoal lighter container and its contents. Defendant contends that this destroyed evidence was potentially exculpatory.

¶ 28        The State is required to disclose evidence favorable to the accused and material to his guilt. *Id.* at 87. To succeed on a *Brady* claim, a defendant must demonstrate that (1) the undisclosed evidence is favorable to the defendant because it is either exculpatory or impeaching, (2) the evidence was either inadvertently or willfully suppressed by the State, and (3) the defendant was prejudiced by the nondisclosure. *People v. Burt*, 205 Ill. 2d 28, 47 (2001). Courts consider evidence material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985).

¶ 29    Defendant contends that if evidence is intentionally destroyed before the defense has an opportunity to inspect the evidence, courts must consider the evidence favorable to the accused. Defendant cites three cases in support of this contention. First, defendant cites *People v. Nichols*, 63 Ill. 2d 443, 446-48 (1976), a case where the prosecution failed to turn over a shoe left at the crime scene. In conducting its *Brady* analysis of whether the shoe may have been material and favorable to the defendants, the court did not indicate that it was presuming the shoe was material and favorable to the defendants. *Id.* Instead, the court analyzed the defendants' denial of the crimes and their presentation of the defense of alibi. *Id.* at 448. The court noted that the defendants sought to demonstrate the victims had been mistaken in their identification of them and that other people had committed the crimes. *Id.* The shoe in question was found outside a window that was suggested to have been the means of entry into the apartment. *Id.* In addition, a palm print on a wall near the window was determined not to be one of the defendants. *Id.* Based on all these facts, the shoe was found to be favorable to the defendants. *Id.* We find no support for the contention that the *Nichols* court *presumed* the evidence was favorable to the defendants merely because it was destroyed.

¶ 30    Defendant also relies on *People v. Carballido*, 2015 IL App (2d) 140760. The *Carballido* court did find that "[w]hen it is not clear whether the undisclosed evidence would be favorable, we should presume that it would be favorable." *Id.* ¶ 71. In support, the *Carballido* court cited *Nichols*. Having found that *Nichols* recognized no such presumption, we decline to find *Carballido* persuasive. Nor is *People v. Danielly*, 274 Ill. App. 3d 358 (1995), also cited by defendant, persuasive. The *Danielly* court did not address a presumption of favorable evidence for a *Brady* claim. See *id.* Instead, the court addressed whether missing evidence constituted a due process violation under *Arizona v. Youngblood*, 488 U.S. 51 (1988), and addressed "favorable evidence"

9

as it relates to whether a specific jury instruction should have been given to the jury. *Danielly*, 274 Ill. App. 3d at 363-64, 367-68.

¶ 31    Beyond its mistaken reliance on *Nichols*, *Carballido* is unpersuasive because the presumption that undisclosed or destroyed evidence must be deemed favorable to the accused conflicts with the structure of *Brady*. A *Brady* claim requires the defendant to establish that the suppressed evidence was favorable and material (*Brady*, 373 U.S. at 87). Presuming favorability whenever evidence is unavailable effectively eliminates the first element of the *Brady* test and relieves the defendant of that burden. Moreover, such a presumption improperly conflates *Brady*'s disclosure rule with the separate due process framework, governing lost or destroyed evidence under *Youngblood*, which requires a showing of bad faith when evidence is merely potentially useful. Treating unavailable evidence as presumptively favorable would allow defendants to bypass the *Youngblood* bad-faith requirement and would require courts to speculate about the exculpatory value of evidence that no longer exists.

¶ 32    *Carballido* is also factually dissimilar. That case involved a set of field notes, created by an investigator and not tendered to the defense, that directly contradicted the investigator's testimony at trial. While the extent to which the contradiction aided the defendant's case was "not clear," it was still evidence that the contradiction constituted an impeachment opportunity. See *People v. Judeh*, 2017 IL App (1st) 153528-U, ¶ 36 (distinguishing *Carballido* on this same basis). We also note there is a practical difference between preserving investigator's notes and preserving flammable chemicals. For these reasons, we do not find *Carballido* persuasive.

¶ 33    Without presuming that the evidence was favorable to defendant, we cannot say that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley*, 473 U.S. at 682. M.S. testified that defendant

10

threatened to burn the home and end his and his mother's life. After defendant returned to the home, M.S. observed liquid being sprayed on the side of the house. Walker testified that defendant sprayed the side of the home and her body with the liquid from a Kingsford Charcoal Lighter container. After being sprayed in the face, Walker tasted lighter fluid, her sinuses burned, her eyes had to be flushed by paramedics, and her eyes watered. In addition, Walker testified that defendant attempted to engage the lighter he had on his person on her body after spraying her with the liquid. Given this evidence, we cannot say that defendant has demonstrated that the Kingsford Charcoal Lighter container and its contents were "favorable to the accused." See *Brady*, 373 U.S. at 87-88.

¶ 34                                  2. Bad Faith Destruction of Potentially Useful Evidence

¶ 35        Defendant next argues that if the charcoal lighter container and contents can only be considered 'potentially useful' to his defense, his right to due process was still violated because the destruction of the container and its contents was in bad faith.

¶ 36        The fundamental fairness requirement of the due process clause cannot be read "as imposing on the police an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution." *Arizona v. Youngblood*, 488 U.S. at 58. Thus, "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process." *Id.*; see *Illinois v. Fisher*, 540 U.S. 544, 549 (2004) (*per curiam*) ("[T]he substance destroyed here was, at best, 'potentially useful' evidence, and therefore *Youngblood*'s bad-faith requirement applies."). Bad faith is demonstrated when a police officer acts dishonestly, with ill will, or with a furtive design. *People v. Nunn*, 2014 IL App (3d) 120614, ¶ 17. Bad faith is not "[m]ere negligence or sloppiness." *People v. Gentry*, 351 Ill. App. 3d 872, 878 (2004).

11

¶ 37    Defendant argues that Deputy Williford acted in bad faith when he destroyed the lighter fluid container and its contents because he did so within hours of the incident and he retained the lighter that also contained a flammable liquid.

¶ 38    According to the unrebutted testimony at trial, Deputy Williford testified that he took the Kingsford Charcoal Lighter container back to the Will County Sheriff's Office, photographed it, checked it for latent prints, and then destroyed it because there was no safe way to store the container with flammable contents in the evidence vault. This was the practice of the Will County Sheriff's Office with flammable materials to ensure no other evidence in the vault could catch on fire. Deputy Williford concluded that the container held a flammable liquid based on the bottle being identified as Kingsford Charcoal Lighter. Deputy Williford stored the three broken pieces of the lighter in vault. This included the trigger guard, the grip, and the electrical component of the lighter. There was no testimony or evidence that any of the three pieces of the broken lighter contained a flammable liquid. The trial evidence does not support a finding of bad faith by Deputy Williford in destroying the Kingsford Charcoal Lighter container and its contents. See *Youngblood*, 488 U.S. at 58 (police's failure to refrigerate clothing and perform tests on semen samples "can at worst be described as negligent").

¶ 39    The cases relied upon by defendant to support a finding of bad faith are distinguishable. See *People v. Sandridge*, 2020 IL App (1st) 173158, ¶¶ 24-25 (bad faith found after detective intentionally and willfully destroyed his field notes contemporaneous to when they were subpoenaed by the defendant and with no indication the destruction was part of the police department's procedure); *People v. Walker*, 257 Ill. App. 3d 332, 335-36 (1993) (bag and clothing were not destroyed in accord with normal police procedure and the destroyed evidence "played a central role in defendant's defense of misidentification"); *State v. Viloria-Ramirez*, No. A-3962-

12

17T1, 2019 WL 1012275, at*4 (N.J. Super. Ct. App. Div. Mar. 4, 2019) (destroyed containers of alcohol material to accused's defense and his testimony that the containers were unopened).

¶ 40    We find no evidence of bad faith in the destruction of the lighter fluid container and its contents, and, thus, we find no violation of due process in this regard. See *Youngblood*, 488 U.S. at 58; *Fisher*, 540 U.S. at 549.

¶ 41    Defendant further argues his right to due process was violated under *People v. Newberry*, 166 Ill. 2d 310 (1995). The *Newberry* court found that an accused's due process rights were violated after cocaine was destroyed by an evidence technician after the defense filed a discovery motion. *Id.* at 312-13. The court rejected the State's argument that the evidence was not destroyed in bad faith, distinguishing its facts from *Youngblood* and *California v. Trombetta*, 467 U.S. 479 (1984). *Newberry*, 166 Ill. 2d at 314-16. Unlike *Youngblood*, the evidence destroyed in *Newberry* was "more than just 'potentially useful' " but was "essential to and determinative of the outcome of the case." *Id.* at 315. Unlike *Trombetta*, where breath samples were destroyed in accord with normal procedures after reliable testing, the record in *Newberry* did not demonstrate that the laboratory procedures used for testing the cocaine were especially reliable or that testing would not have yielded a more favorable result of the accused. *Id.* at 315-16. Further, *Newberry* lacked any alternative means to show his innocence. *Id.* at 316.

¶ 42    The present case is readily distinguishable from *Newberry*. First, the lighter fluid container and its contents were not destroyed after the receipt of a discovery request for the container or its contents. Nor, as discussed above, was the destroyed evidence "essential to and determinative of the outcome of the case." *Id.* at 315. Thus, *Newberry* does not support a finding that defendant's right to due process was violated.

13

¶ 43                        3. Violation of Illinois Supreme Court Rule 412

¶ 44        Defendant argues that the State violated Illinois Supreme Court Rule 412 (eff. Mar. 1, 2001) by failing to disclose tangible evidence that was used at trial that had the potential to negate his guilt of attempted residential arson.

¶ 45        The parties raise alternative arguments applying plain-error or harmless-error review for any Rule 412 violation. The reviewing court considers only plain error when a defendant has forfeited appellate review of an issue. *People v. Thompson*, 238 Ill. 2d 598, 611 (2010). If an issue is preserved for review, the court conducts a harmless-error analysis. *Id.*

¶ 46        To preserve an issue for review, a defendant must raise the error at trial and in his post-trial motion. *People v. Hauck*, 2022 IL App (2d) 191111, ¶ 32. The forfeiture rule requires a defendant to raise the issue in the trial court to ensure that the trial court has the opportunity to correct any errors before an appeal and to ensure that a defendant does not obtain a reversal through his own inaction. *Id.* Any objection must specifically identify the grounds for the objection. *Id.* ¶ 33. While an issue does not have to be identical to an issue raised at trial, a claim will be considered forfeited if the trial court did not have the opportunity to review essentially the same claim. *Id.*

¶ 47        Here, defendant raised the issue of Deputy Williford destroying the charcoal lighter container and its contents during trial and in his posttrial motion. Though the objections raised by defendant at trial and in posttrial motions included argument that the destruction of the container and its contents violated *Brady* and *Youngblood*, they did not include any argument or even citation of Rule 412. Nor did the court address any possible violation of Rule 412 based on the arguments that were presented. Thus, we find defendant's claim of a Rule 412 violation to be forfeited. *Contra*, *Hauck*, 2022 IL App (2d) 191111, ¶ 33 (finding although the specific issue was not raised

14

at trial, the trial court had the opportunity to, and did, address the issue). We therefore review the violation under the plain-error analysis.

¶ 48    Under the plain-error doctrine, a reviewing court may consider unpreserved error under two circumstances: (1) where a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the outcome of the case against the defendant, regardless of the seriousness of the error, or (2) a "clear or obvious error" occurred, and the error was so serious it affected the fairness of the defendant's trial and challenged the integrity of the judicial system, regardless of the closeness of the evidence. *People v. Sebby*, 2017 IL 119445, ¶ 48. The first step under the plain error doctrine is determining whether there was an error at trial. *Id.* ¶ 49.

¶ 49    Rule 412 provides in pertinent part that:

"(c) Except as is otherwise provided in these rules as to protective orders, the State shall disclose to defense counsel any material or information within its possession or control which tends to negate the guilt of the accused as to the offense charged or which would tend to reduce his punishment therefor. The State shall make a good-faith effort to specifically identify by description or otherwise any material disclosed pursuant to this section based upon the information available to the State at the time the material is disclosed to the defense. At trial, the defendant may not offer evidence or otherwise communicate to the trier of fact the State's identification of any material or information as tending to negate the guilt of the accused or reduce his punishment." Ill. S. Ct. R. 412(c) (eff. Mar. 1, 2001).

¶ 50    Here, defendant contends that "[b]ecause the destroyed evidence fell within the scope of Rule 412, the State's destruction of the evidence violated the Rule." The State does not dispute

15

that the charcoal lighter container and its contents were destroyed within hours of the incident and that defendant was not informed of the destruction before it occurred. Accordingly, we agree that a violation of Rule 412 occurred.

¶ 51     Turning to first-prong plain error analysis, the closely balanced inquiry requires the court to "evaluate the totality of the evidence and conduct a qualitative, commonsense assessment of it within the context of the case." *Sebby*, 2017 IL 119445, ¶ 53. This requires "an assessment of the evidence on the elements of the charged offense or offenses, along with any evidence regarding the witnesses' credibility." *Id.* The burden of showing the evidence was closely balanced lies with the defendant. *Id.* ¶ 51.

¶ 52     "A person commits the offense of attempt when, with intent to commit a specific offense, he or she does any act that constitutes a substantial step toward the commission of that offense." 720 ILCS 5/8-4(a) (West 2022). "A person commits residential arson when he or she, in the course of committing arson, knowingly damages, partially or totally, any building or structure that is the dwelling place of another." *Id.* § 20-1(b). "A person commits arson when, by means of fire or explosive, he or she knowingly: (1) Damages any real property, or any personal property having a value of $150 or more, of another without his or her consent[.]" *Id.* § 20-1(a)(1).

¶ 53     The evidence at trial was not closely balanced. Horton testified that she owned the home on East Cass Street and defendant did not have permission to set the home on fire. M.S. testified that defendant threatened to burn the home and kill him and his mother. After leaving the area for a short time, defendant returned, and M.S. observed liquid being sprayed on the side of his grandmother's home. Walker testified that, upon his return to the home, defendant was in an agitated state, and he sprayed the side of the home and her body with a liquid from a Kingsford Charcoal Lighter container. Immediately after spraying Walker with the liquid, defendant

16

attempted to light the liquid on fire by engaging a lighter he had on his person. Officers retrieved the container and lighter from the scene. After being sprayed in the face, Walker tasted lighter fluid, her sinuses burned, her eyes had to be flushed by paramedics, and her eyes watered. The testimony of both witnesses, M.S. and Walker, was consistent.

¶ 54        Defendant argues that the evidence failed to prove he had the specific intent to commit arson or took a substantial step towards committing arson because, viewing the destroyed liquid in the light most favorable to him, he sprayed the house with water, not lighter fluid. As discussed above, we are not required to assume that the destroyed liquid was water or otherwise view the missing evidence in the light most favorable to defendant.

¶ 55        Defendant further argues that State failed to offer confirmatory evidence that the liquid in the container was lighter fluid but was based on speculation or conjecture. We disagree; the liquid was in a Kingsford Charcoal Lighter container, and Walker testified to an adverse chemical reaction after being sprayed with the liquid consistent with a flammable material. In addition, defendant attempted to ignite the liquid after spraying Walker, conduct inconsistent with spraying water on Walker. Thus, defendant has not demonstrated the first prong of the plain error doctrine.

¶ 56        Nor has defendant demonstrated that the error was so serious it affected the fairness of defendant's trial and challenged the integrity of the judicial system. *Sebby*, 2017 IL 119445, ¶ 48. As set forth above, it is undisputed that the container and its contents were destroyed without first informing defendant that the evidence would be destroyed. However, the evidence was destroyed in common practice because there was no means to safely store a flammable liquid (based on the liquid being in a Kingsford Charcoal Lighter container) in the evidence vault. Defendant was informed of the destruction of the container and its contents prior to trial. While defendant had the opportunity to cross-examine Deputy Williford, and did so, that cross-examination failed to raise

17

evidence of destruction of the evidence in bad faith or raise issues of credibility. Defendant also crossed-examined Walker, who testified regarding her adverse reactions to the liquid after being sprayed in the face. Accordingly, any error did not affect the fairness of defendant's trial or challenge the integrity of the judicial system. See *Youngblood*, 488 U.S. at 58 (due process clause cannot be read "as imposing on the police an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution"). But see *Sandridge*, 2020 IL App (1st) 173158, ¶¶ 24-25 (detective's intentional destruction of his field notes almost contemporaneously with their being subpoenaed by the defendant was not in accordance with the police department's procedure, appeared to be "willful, inexplicable, and outside normal procedures, and violated Illinois law.").

¶ 57                                    B. Sufficiency of the Evidence

¶ 58          Defendant next argues that the evidence at trial was insufficient to prove beyond a reasonable doubt that he had the specific intent to commit arson or that he took a substantial step towards committing arson.

¶ 59          When a defendant challenges the sufficiency of the evidence, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Collins*, 106 Ill. 2d 237, 261 (1985) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

¶ 60          Defendant repeats the same arguments addressed above, that the destroyed evidence should be viewed in a light most favorable to him and that the other evidence was insufficient to demonstrate guilt beyond a reasonable doubt. As fully set forth above, the evidence at trial was sufficient to establish defendant's guilt of attempted residential arson.

18

¶ 61                                    C. One Act, One Crime

¶ 62        Under the one-act, one-crime rule, multiple convictions are improper if they are based on the same physical act. *People v. Coats*, 2018 IL 121926, ¶ 11. The State concedes that defendant improperly received separate convictions for domestic battery, counts VII and XI of the indictment, based on the same acts underlying the convictions of aggravated domestic battery of M.S. and Walker. We find the concession to be warranted by the record and, accordingly, vacate defendant's convictions on counts VII and XI (domestic battery).

¶ 63                                         III. CONCLUSION

¶ 64        The destruction of the Kingsford Charcoal Lighter container and its contents before trial did not violate defendant's right to due process. The State proved defendant guilty of attempted residential arson, under sections 8-4 and 20-1(b) of the Code (720 ILCS 5/8-4, 20-1(b) (West 2022)), beyond a reasonable doubt. Defendant's domestic battery convictions, counts VII and XI, are based on the same underlying facts as the aggravated domestic battery convictions. Thus, the domestic battery convictions are vacated under one-act, one-crime rule.

¶ 65        Affirmed in part and vacated in part.

19

*People v. Southall*, 2026 IL App (3d) 250264

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Will County, No. 2023-CF-2302; the Hon. Vincent F. Cornelius, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Santiago A. Durango, and Adam Bukani, of State Appellate Defender's Office, of Ottawa, for appellant. |
| **Attorneys for Appellee:** | James W. Glasgow, State's Attorney, of Joliet (Patrick Delfino, Thomas D. Arado, and Justin A. Nicolosi, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |